IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY

| | |
|---|---|
| Carl Schröter GmbH & Co. KG, | Civil Action No.: 2:20-cv-00334-RMG |
| Plaintiff, | |
| vs. | **MEMORANDUM IN SUPPORT OF MOTION FOR INTERLOCUTORY SALE OF VESSEL** |
| Smooth Navigation S.A., | |
| Defendant. | |

**COMES NOW** Plaintiff, Carl Schröter GmbH & Co. KG, by and through undersigned counsel, and files this Memorandum in Support of Motion for Interlocutory Sale of M/V EVOLUTION (IMO No. 9122899)("Vessel").

## PRELIMINARY STATEMENT

Pursuant to Rule E(9)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules for Certain Admiralty and Maritime Claims"), Plaintiff is requesting for an Order permitting an Interlocutory Sale of the Vessel. The grounds for this motion are: (1) the Vessel has not been released from attachment; (2) the Vessel is subject to deterioration, decay or injury by being detained in custody pending this action; (3) the expenses of keeping the Vessel under attachment is excessive; and (4) there has been an unreasonable delay by Defendant in securing the Vessel's release.

## BACKGROUND FACTS

The captioned case involves the attachment of a vessel to obtain security for Plaintiff's maritime claim against Defendant, pursuant to 28 U.S.C. §1333, Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims

and Asset Forfeiture Actions. This action was necessitated due to defendant Smooth Navigation S.A.'s failure to deliver 15,095.638 metric tons of Direct Reduced Iron in the same condition as received in the loading port.

On January 31, 2020, the United States Marshal for this district attached M/V EVOLUTION (IMO No. 9122899), pursuant to this Court's order dated January 31, 2020. The owners of the Vessel have been provided with notice of the attachment and have filed a motion to vacate the attachment. See Docket Number 14. An opposition to the owner's motion to vacate will be filed by Plaintiff in accordance with the Court's text order dated February 21, 2020.

There has been no attempt whatsoever to post security to release the Vessel from attachment. In fact, no one has even inquired as to what type and the amount of security Plaintiff would accept to release the vessel from seizure. The failure to release the Vessel from seizure is increasing *custodia legis* expenses, which presently are in excess of Seventy-Three Thousand One Hundred Seventy and xx/100 ($73,170.00) Dollars[1] as of February 22, 2020. See Statement Under Penalty of Perjury of James D. Lucas dated February 19, 2020 attached as Exhibit "1".[2]

However, Plaintiff is having difficulty obtaining written authority from the U.S. Coast Guard to anchor the vessel at Commercial Anchorage B in Charleston Harbor for more than 72 hours and

---

[1] $5000.00 paid to the U.S. Marshal Service + $44,070.00 Plaintiff has agreed to pay to the South Carolina State Ports Authority + $24,100.00 for substitute custodian charges.

[2] The statement of James D Lucas attached as Exhibit "1" indicates that the South Carolina State Ports Authority charges for dockage and security are $85,897.50. On February 21, 2020, an agreement was reached between Plaintiff and the South Carolina State Ports Authority with regard to payment of these charges. Plaintiff has agreed to pay the South Carolina State Ports Authority $44,070.00, and the South Carolina State Ports Authority has agreed to accept $44,070.00 as long as the Vessel is moved away from its pier within the next few days.

locating a guard service to provide armed guards for the vessel 24 hours a day. In order to move the Vessel to Commercial Anchorage B, U.S. Customs and Boarder Patrol is going to require Plaintiff to have armed guards on the vessel 24 hours a day. As such, Plaintiff may not be able to move the Vessel to Commercial Anchorage B and its agreement with the South Carolina State Ports Authority may be in jeopardy. If Plaintiff's agreement with the South Carolina State Ports Authority fails and the Vessel cannot be moved to Commercial Anchorage B, then the *custodia legis* expenses will be much greater than Sixty-Eight Thousand One Hundred Seventy and xx/100 ($68,170.00) Dollars as of February 22, 2020.

The vessel is incurring approximately Eight Hundred and 00/100 ($800.00) Dollars per day in *custodia legis* expenses for Substitute Custodian fees and an additional $4700.00 per day for dockage and armed guards in the event the Vessel cannot be moved to Commercial Anchorage B. Id. Plaintiff has already paid U.S. Marshal fees of Five Thousand and 00/100 ($5,000.00) Dollars. The *custodia legis* expenses are increasing each day the Vessel remains under attachment.

Through February 17, 2020, the total amount owed to James D. Lucas Co., LLC for serving as Substitute Custodian during the time periods the Vessel has been under attachment is Twenty Thousand One Hundred and xx/100 ($20,100.00) Dollars. See Exhibit "1". By the end of February 2020, the total owed for serving as Substitute Custodian will be Twenty-Nine Thousand Seven Hundred and xx/100 ($29,800.00) Dollars. Id. Within a few months, Plaintiff will have to pay the U.S. Marshal Service an additional Five Thousand and 00/100 ($5,000.00) Dollars.

Plaintiff is also planning on trying to move the Vessel to an anchorage in Charleston Harbor to reduce the daily amount owed for dockage. Id. This anchorage is called Commercial Anchorage

B, between the South Channel and the James Island shore. Id. However, Plaintiff will have to employ tugs, line handlers to untie the Vessel from the wharf and a harbor pilot to move the Vessel Id. The cost of moving the Vessel to Commercial Anchorage B includes the following approximate expenses:

| | | | |
|---|---|---|---|
| A) | Line Handlers to remove lines between the Vessel and Wharf: | | $1000.00 |
| B) | Docking Pilot: | | $1500.00 |
| C) | Harbor Pilot: | | $350.00 |
| D) | Two tugs: | | $9000.00 |
| | Approximate Total of Move: | | $11,850.00 |

Id. Thus, Plaintiff will incur about an additional $11,850.00 to move the vessel to Commercial Anchorage B. Assuming the Vessel can anchor at Commercial Anchorage B, U.S. Customs and Board Patrol will require armed guards for the vessel and daily launch services for the guards and U.S. Customs and Boarder Patrol agents to inspect the vessel and its crew. The cost of the guards and launch service is not presently known.

The Vessel has around 40 metric tons of fuel on board and she consumes around 2 ton metric tons each day, plus about 1 ton to move her from the wharf to the Commercial Anchorage B. Id. She will need additional fuel in about 17 days. Id. The cost of fuel will be $580.00 per metric ton of marine gas oil at a 50 ton minium, plus a delivery charge of $7618.00 and an spill retention boom charge of $1200.00. Id. The total cost of the fuel will be $37,818.00. Id. This will be an additional *custodia legis* expense.

The Vessel has enough potable or consumable water for the next 23 to 28 days. Id. The cost of supplying the Vessel will be $5.00 per ton and 100 tons of water will be purchased at a cost of $500.00. Id. This will be an additional *custodia legis* expense.

As of February 20, 2020, the amount owed to Plaintiff for damage to Direct Reduced Iron and other expenses dealing with the cargo damage is EUR 1,326,651.45, excluding collection costs. See Statement Under Penalty of Perjury of Norbert Bittner attached as Exhibit "2".

The Vessel is subject to deterioration, decay or injury as it is currently docked. See Statement Under Penalty of Perjury of Anthony C. English attached as Exhibit "3". Its lack of use subjects it to an increased risk of deterioration or decay. Id. The Vessel is also subject to injury by act of God, etc. Id. According to Anthony C. English, a ship broker, the vessel's fair market value is around US $2,750,000.00. Id.

Plaintiff's damages and *custodia legis* expenses as of February 22, 2020 total in excess of US $1,510,272.40. This amount assumes that the agreement with the South Carolina State Ports Authority is consummated and does not include future expenses for dockage, guards, vessel security, fuel, water, and other expenses. As of today's date, Plaintiff's claim is almost 55% of the Vessel's fair market value.

**LAW AND ARGUMENT**

Plaintiff was permitted to attach the Vessel to obtain security for its claimant against Defendant. Attachment pursuant to Supplemental Rule B is recognized as a prejudgment mechanism used by parties in admiralty cases to secure jurisdiction over an absent party and to obtain security for potential judgment where the absent party's assets are transitory. See Vitol, S.A. v. Primerose Shipping Co., Ltd., 708 F.3d 527, 540 (4th Cir.2013). A Rule B attachment case is, therefore, a *quasi in rem* action instituted for the purpose of (1) asserting jurisdiction over the

defendant in personam through the property and (2) to assure satisfaction of any judgment. Woodlands Ltd. v. 541 Nationsbank N.A., 164 F.3d 628 (table), No. 97–1813, 1998 WL 682156 (4th Cir. Sept. 23, 1998).

> Supplemental Rule B provides in pertinent part:
>
> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

Fed.R.Civ.P. Adm. Supp. R. B(1)(a)

While under attachment, the vessel serves as security for the plaintiff's claim. The general maritime law and the Supplemental Rules for Certain Admiralty and Maritime Claims permit an attached vessel to be sold prior to a determination of the merits and the proceeds from the sale to serve as security for the Plaintiff's claims.

Pursuant to the facts of this action, all of the requirements for an interlocutory sale of the Vessel, pursuant to Rule E (9)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims, have been satisfied. In the interest of justice, this Court should order an interlocutory sale of the Vessel to preserve Plaintiff's security for its maritime claim against Defendant and for the proceeds from the sale deposited into the Registry of the Court, pending the final resolution of the dispute between Plaintiff and Defendant. The proceeds from the sale will serve as security for Plaintiff's claim.

Under Rule E (9)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims, a vessel which has been attached may be sold by order of the court at an interlocutory sale. Rule E(9) (a)(i) provides:

>   on application of a party the court may order all or part of the property sold-with the sale proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court-if: (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or disproportionate; or (C) there is an unreasonable delay in securing the release of the property.

The purpose of this sale is to dispose of the property before there has been a judgment on the merits and to place the proceeds of the sale into the registry of the court. An interlocutory sale is permitted where:

> "(A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>
> (B) the expense of keeping the property is excessive or disproportionate; or
>
> (C) there is unreasonable delay in securing the release of the property."

Pee Dee State Bank v. Wild Turkey, 1992 AMC 1896 (D.S.C. 1991); Beach First Nat. Bank v. Motor Yacht BAD HABIT, Slip Copy, 2009 WL 1649743 (D.S.C. 2009); Silver Star Enterprises, Inc. v. M/V Sarmacca, 19 F.3d 1008, 1014 (5th Cir.1994); Merchants Nat. Bank of Mobile v. Dredge General G.L. Gillespie, 663 F.2d 1338 (5th Cir. 1981)(finding interlocutory sale was justified where excessive costs totaled $17,000 per month). An interlocutory sale of a vessel may be ordered when only one of the above listed criteria is satisfied. Id.

In the case at bar, two of the three the requirements enumerated in Rule E for an interlocutory sale of the Vessel have been satisfied and hence, the Vessel may be sold at an interlocutory sale. The Vessel is liable to deterioration or injury while being detained in the custody of the U.S. Marshal and the Substitute Custodian. See Merchants National Bank of Mobile v. Dredge General G.L. Gillespie, 663 F.2d 1338, 1992 AMC 1 (5th Cir. 1981). The expenses of justice have become excessive and

have created a situation where Plaintiff's security is no longer adequate to satisfy Plaintiff's maritime lien. See Pee Dee State Bank v. Wild Turkey, 1992 AMC 1896 (D.S.C. 1991) (sale of vessel warranted where value of vessel and custodial costs were greater than the value of the bank's claim on its preferred ship mortgage).[3]

According to Mr. English, the Vessel is subject to deterioration, decay or injury during her detention in Charleston and is also subject to injury by Acts of God, collision, etc. See Exhibit 3.

The vessel is presently a wasting asset. The total cost to Plaintiff of keeping the vessel under attachment is in excess of Seventy-Three Thousand One Hundred Seventy and xx/100 ($73,170.00) Dollars[4] as of February 22, 2020, and increasing each day the Vessel is not released from attachment. This amount could increase if the agreement with the South Carolina State Ports Authority is not consummated and the Vessel remains in her berth and does not sail to Commercial Anchorage B.

By the end of February 2020, assuming the Vessel remains at the South Carolina State Ports Authority and said deal is not consummated, the *custodia legis* expenses could total more than $200,000.00 The Vessel currently must remain at the South Carolina State Ports Authority due to the U.S. Customs and Boarder Patrol not clearing the Vessel to leave her berth, Plaintiff not being able to locate armed guards and the U.S. Coast Guard not providing authority for the Vessel to remain at Commercial Anchorage B for more than 72 hours.

---

[3] Under Supplemental Rule E(5), a vessel can be released from attachment or arrest when a bond is posted to cover a plaintiff's claim that does not exceed twice the amount of the plaintiff's claim or the value of the attached property, whichever is smaller.

[4] $5000.00 paid to the U.S. Marshal Service + $44,070.00 Plaintiff has agreed to pay to the South Carolina State Ports Authority + $24,100.00 for substitute custodian charges.

The increasing expenses to maintain and protect the vessel while in the custody of the court are to be repaid out of the proceeds from the vessel sale in priority to all claims, thereby substantially lessening the value of the attached property. Thus, the funds remaining from the sale to pay Plaintiff are diminishing each day the vessel remains under seizure. The total amount of the *custodia legis* expenses to date are excessive. This has created a situation where there may not be enough security for Plaintiff's claim once the vessel is sold as the claim and current custodia legis expenses are almost 55% of the Vessel's fair market value and continue to increase. Any further delay in selling the vessel at a U.S. Marshal's sale will cause great prejudice to Plaintiff as its costs will increase.

The cost of *custodia legis* expenses will continue to accrue for at least an additional three to six weeks until the vessel is sold at a U.S. Marshal's sale, the sale is confirmed by this Court, the U.S. Marshal Service issues a standard U.S. Coast Guard Bill of Sale for the vessel to the new owner, and custody of the vessel is transferred to the new owner. During this time period, Plaintiff will be required to pay the expenses of keeping the vessel under attachment, which will further reduce the amount of security for its claims. The vessel owner will also have the opportunity to post security to have the vessel released from attachment before any sale.

In the event that the motion is granted, Plaintiff will have to make the necessary arrangements with the U.S. Marshal's Service to schedule a date for the sale. Once the date of the sale is selected, the Plaintiff will be required to advertise the sale over a ten day period. If the Vessel is sold at the U.S. Marshal's sale, additional time will elapse until the Court confirms the sale. After the Court confirms the sale, the U.S. Marshal Service will be required to issue a bill of sale to the new owner. Thus, even if the Court orders the interlocutory sale of the Vessel, it will take numerous weeks to

arrange for and complete the sale. This will result in Plaintiff incurring additional costs and security for its claim further eroding.

Proceeds from an interlocutory sale of the vessel, if deposited into the registry of this Court, would serve as an acceptable and desirable substitute for the Vessel itself. The proceeds from the sale would further accomplish the purpose of eliminating the mounting *custodia legis* costs and the possibility of damage to the Vessel.

Conditions for selling the Vessel have been satisfied in this case. Thus, the Vessel should be sold at an interlocutory sale.

## CONCLUSION

Wherefore, Plaintiff prays that the Vessel be sold by the United States Marshal on an expedited basis after public notice of sale is published on two different days in The Post and Courier in accordance with a proposed order that will be emailed to the Court, the internet, and/or any other publication that will provide potential buyers with notice of the sale; the first notice being published at least ten days prior to the date of the sale and the last at least three days before the date of sale; and that the United States Marshal be directed to deposit the proceeds of said sale into the registry of this Court in an interest bearing account, pending further disposition of this action.

BLUESTEIN LAW FIRM, P.A.

By: s/ S. Scott Bluestein
S. Scott Bluestein - Federal No. 6981
P.O. Box 22253
Charleston, SC 29413
1040 eWall Street
Mount Pleasant, SC 29464
843-577-3092 (telephone)
843-577-3093 (facsimile)
E-mail: scott@boatinglaw.us

ATTORNEY FOR PLAINTIFF

Mount Pleasant, South Carolina
February 22, 2020