IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY

| | |
|---|---|
| Carl Schroter GmbH & Co. KG, | Civil Action No.: 2:20-cv-334-RMG |
| Plaintiff, | |
| vs. | **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR INTERLOCUTORY SALE OF VESSEL** |
| Smooth Navigation S.A. | |
| Defendant. | |

Defendant Smooth Navigation S.A., ("**Defendant**" or "**Smooth**"), through the restricted appearance of its undersigned counsel Womble Bond Dickinson (US) LLP and Tisdale Law Offices, LLC pursuant to Supplemental Admiralty Rule E(8), respectfully submits its Memorandum in Opposition to Motion for Interlocutory Sale of the Vessel. [D.E. 20].

## PRELIMINARY STATEMENT

Twenty-three days after its ex parte attachment of the M/V EVOLUTION, Plaintiff now has moved for an order directing the interlocutory sale of Defendant's Vessel. As set forth in Defendant's Motion to Vacate (D.E. 14), Plaintiff had no right to attach the M/V EVOLUTION ("**Vessel**") in the first instance because it has failed to meet the requirements of Supplemental Admiralty Rule B. Plaintiff's Motion for Interlocutory Sale should be denied because the attachment was improper and the Vessel should be released from attachment.

Further, Plaintiff has provided no evidence that the Vessel is deteriorating or that Defendant has unreasonably delayed in attempting to release the Vessel from attachment. As demonstrated in the Motion to Vacate, Defendant is unable to post substitute security on its own

1

and its insurer is unable to do so because of an Iranian nexus. All the cases cited by Plaintiff in relation to its request for interlocutory sale involve many *months* of delay, or unopposed motions for sale on default. Here, in contrast, the Defendant has appeared before this Honorable Court and filed a Motion to Vacate the Attachment within 21 days of its seizure. Plaintiff is, however, correct that during the pendency of its attachment proceedings, the Plaintiff "will be required to pay the expenses of keeping the vessel under attachment.…" [D.E. 20-1, p. 9]. In this regard, Defendant has filed a Motion to Compel Payment of *in custodia legis* expenses. [D.E. 24].

## **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

For a more detailed recitation of the underlying facts, Defendant respectfully references and incorporates the factual background contained in its Memorandum of Law in Support of its Motion to Vacate [D.E. 14].

The United States Marshal for the District of South Carolina served the Warrant of Vessel Arrest on January 31, 2020. Since that date, the Vessel has been under attachment and has been unable to depart the District of South of Carolina. On February 20, 2020, Defendant filed its Motion to Vacate the Attachment with Supporting Memorandum of Law, and the accompanying declaration of Michalis Kokkinis. The bases of Defendant's Motion to Vacate are, *inter alia*, that Plaintiff lacks a *prima facie* maritime claim, that Plaintiff is not the correct party to sue on this claim, and that Plaintiff's failure to advise this Honorable Court of the full details underlying its alleged cargo damage claim, which is tainted by fraud, necessitates the immediate *vacatur* of the attachment. [D.E. 14].

Apparently concerned with its increasing obligations under controlling law to satisfy *custodia legis* costs and expenses resulting from its attachment of Defendant's Vessel, Plaintiff filed a Motion for Interlocutory Sale on February 22, 2020. The Plaintiff in that pleading argues

that the Vessel should be sold because: 1) the Vessel has not been released from attachment, 2) the Vessel is subject to deterioration, 3) the *custodia legis* expenses are excessive, and 4) there has been unreasonable delay by Defendant in securing the Vessel's release. None of these four contentions warrants the interlocutory sale of the Vessel.

As demonstrated in Defendant's Motion to Assess *Custodia Legis* expenses [D.E. 24], as the attaching party, Plaintiff is responsible for all in *custodia legis* costs and expenses incurred as a result of and during the pendency of this action. However, nothing warrants the sale of the Vessel at this time.

## LEGAL STANDARD

Supplemental Admiralty Rule E provides, in pertinent part, as follows,

(9) Disposition of Property; Sales.

   (a) *Interlocutory Sales; Delivery.*

   (i) On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:

   (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;

   (B) the expense of keeping the property is excessive or disproportionate; or

   (C) there is an unreasonable delay in securing release of the property.

## LEGAL ARGUMENT

I. **None of the three circumstances required for interlocutory sale is present in this case**

   A. **The Vessel is not subject to deterioration**

The only part of Plaintiff's submissions which allegedly supports its argument that the Vessel is subject to deterioration is the Declaration of Anthony C. English, a shipbroker who is said to specialize in "ship valuation." [D.E. 20-4]. Mr. English declared that an idle vessel will

fetch a lower price in a sale and that the Vessel will be subject to "deterioration" while in Charleston citing "Acts of God, hurricanes, collision, etc." (Id. at ¶ 4).

Mr. English's conclusory statement has no foundation. He has never seen the Vessel. He provides no information about how the Vessel may deteriorate, to what extent or rate it will deteriorate, how if at all such deterioration may affect the Vessel's value, or any other detail or bases supporting the so-called "opinion" he proffers. While the Vessel has been in Charleston, she has been fully crewed, provisioned, bunkered, insured, and inspected by the United States Coast Guard without anything but a few minor deficiencies noted. (Exhibit 1 attached hereto). If sitting idle subjected a vessel to deterioration within the meaning of Rule E, then whenever a vessel is attached or arrested, the arresting party could obtain an order authorizing interlocutory sale merely by detaining the Vessel. Aside from the fact that hurricane season is still several months away, unspecified Acts of God and collisions can occur at any time and at any location in the life of a Vessel. The risk of such an unforeseeable event befalling the Vessel is no greater while the Vessel is under attachment. And in any event, the Vessel is insured against such risks.

In short, Plaintiff falls far short of establishing that the Vessel is subject to deterioration absent an interlocutory sale. Granting an interlocutory sale based on the averments in the English Declaration would essentially authorize interlocutory sale in every case where a vessel was detained. Such a result would be contrary to well-established maritime law and common sense.

### B. The *Custodia Legis* expenses are not disproportionate to the value of the Vessel and are commensurate with seizing a commercial vessel engaged in international trade

Plaintiff's own ship valuation declarant, Anthony C. English, opines that the M/V EVOLUTION is currently worth approximately $2,750,000. [D.E. 20-4]. In its Memorandum of Law in support of this motion, Plaintiff states that its calculation of *custodia legis* expenses

currently stands at $73,170. [D.E. 20-1, p. 2]. Thus, the proportion of *custodia legis* expenses to Plaintiff's valuation of the Vessel is approximately 2.7 percent. Despite the fact that Rule E(9)(a)(i)(B) only refers to the "expense of keeping the property" as being excessive or disproportionate, Plaintiff suggests, without any foundation, that somehow its claimed quantum of damages (which is denied by Defendant) should also be considered in the computation. However, the plain text of Rule E(9)(a)(i)(B), which refers only to the "expense of keeping the property," expressly undermines Plaintiff's argument. Moreover, even if, *arguendo*, we accepted Plaintiff's contention that damages should also be included in the computation, then when the claimed damages and and the *custodia legis* fees are taken together ($1,510,272.40) and compared with the vessel's value ($2,750,000) (D.E. 20-4, p.5), the Vessel must depreciate another 45 percent before there would be a shortfall that might arguably support Plaintiff's argument.

The fact is that the *custodia legis* expenses are entirely commensurate with the costs of preventing a vessel engaged in international trade from proceeding with its business. The rationale underlying Plaintiff's protestations about the *custodia legis* costs is that Plaintiff thought it could hold Defendant hostage to obtain substitute security for its specious claims. However, as repeatedly stated to Plaintiff, this is simply not possible in this matter.

The cases on which Plaintiff relies in its Memorandum of Law involve preferred ship mortgage proceedings where the value of the claim and the *custodia legis* expenses together exceeded or would shortly exceed the value of the vessel. That is certainly not the case here.

### C. There has been no unreasonable delay on the part of Defendant

In its Memorandum of Law [D.E. 20-1], Plaintiff does not appear to argue that there has been unreasonable delay by Defendant in attempting to secure the release of the Vessel. However, for the sake of good order, Defendant will address this issue because in different circumstances

such can be a ground for sale under Rule E(9)(a)(i)(B). Less than 30 days have elapsed since the attachment of the Vessel. On Day 21, Defendant filed its Motion to Vacate the Attachment, which constitutes its attempt to secure the release of the Vessel.

The cases Plaintiff cites in its Memorandum of Law militate against a finding here of unreasonable delay. In *Silver Star Enterprises, Inc. v. M/V SARAMACCA*, the Fifth Circuit affirmed an interlocutory sale after the vessel owner failure to secure the vessel's release after the elapse of **seven months** between the time of the arrest[1] and the sale order. *Silver Star Enterprises, Inc. v. M/V SARAMACCA*, 19 F.3d 1008, 1010 (5th Cir. 1994) (emphasis added). *Silver Star* was an action to foreclose on two preferred mortgages on the Defendant vessel. Another point worth mentioning is that in a Rule C action (like *Silver Star*), the maritime lien is already established and the lien attaches by operation of law. *Silver Star* involved a default on preferred mortgages. That automatic perfection of the maritime lien makes the seven-month delay even more egregious.

The other Fifth Circuit case Plaintiff cites likewise involved foreclosure of preferred ship mortgages pursuant to Supplemental Rule C. *The Merchants Nat'l Bank of Mobile v. The DREDGE GENERAL G.L. GILLESPIE*, 663 F.2d 1338 (5th Cir. 1981). That case involved an **eight-month** delay between seizure of the vessel and the order of sale. *Id.* at 1342 (emphasis added). The Fifth Circuit affirmed the district court's finding that this eight-month delay constituted unreasonable delay and affirmed the interlocutory sale.

---

[1] There is a distinction between a vessel arrest under Supplemental Admiralty Rule C and an attachment under Supplemental Admiralty Rule B. Rule C governs *in rem* actions against the vessel which involve the enforcement of a maritime lien against the vessel as an *in rem* defendant. Rule B, on the other hand, governs attachment and the exercise *quasi in rem* jurisdiction which seeks security on a pre-judgment basis for an eventual judgment. Although not entirely clear in Plaintiff's Verified Complaint or Motion for Interlocutory Sale, the attachment of the M/V EVOLUTION was pursuant to Rule B, and not Rule C.

Plaintiff also cites to an Order of the Honorable David C. Norton of this Court affirming the Report and Recommendation of United States Magistrate Judge Bristow Marchant which granted an unopposed motion for interlocutory sale where the corporate owner was in default for failing to file an appearance. *Beach First Nat'l Bank v. M/Y BAD HABIT*, 2009 WL 1649743, C/A No 2:09-372 DCN (D.S.C. June 10, 2009). That, too, was an action seeking foreclosure of a preferred ship mortgage pursuant to Rule C. Finally, the *Beach First* Court noted that the value of the vessel was insufficient to satisfy the mortgage debt. *Id*. at * 3. The time between the arrest and when District Judge Norton adopted the Magistrate Judge's report and recommendation ordering the vessel sale was more than four months.

Finally, in another Rule C action seeking foreclosure of a preferred ship mortgage, Judge Norton ordered an interlocutory sale when "the vessel under arrest has been in the custody of the Court for three months, with no effort having been made by the owner to obtain its release." *Pee Dee State Bank v. F/V WILD TURKEY*, 1992 A.M.C 1896, 1991 WL 355221, at *5 (D.S.C. Oct. 9, 1991). The condition of the F/V WILD TURKEY was so poor that the US Marshal stated as much in his process return. Further, unlike here, the surveys performed on the vessel indicated that the *custodia legis* costs were likely to exceed the value of the vessel in a very short time.

In sum, all cases on which the Plaintiff relies in support of its motion for interlocutory sale were Rule C arrest cases involving perfected maritime liens and many months of delay between the time of the seizure and the order of sale. Further, they involved situations where the expenses and claimed value already exceeded the value of the vessel or would shortly do so. Accordingly, the cases lend no support to Plaintiff's baseless request to sell Defendant's Vessel while a motion to vacate the attachment is pending. At best, Plaintiff's motion is many months premature.

**II.     Release by Substitute Security is not Possible**

As established by the Declaration of Michalis Kokkinis submitted in support of the Defendant's Motion to Vacate [D.E. 14-2], the owners of the Vessel are unable to post any security on their own. Defendant Smooth's protection and indemnity (P&I) insurer is likewise unable to post security because of the Iranian load port for the cargo which purportedly forms the basis of Plaintiff's claims. Any suggestion by Plaintiff that Defendant or Defendant's insurer is behaving unreasonably sails far wide of the mark because Defendant has been clear from the start that substitute security is impossible in this case. In this regard, Plaintiff's instructing counsel in London was advised of this issue as soon as the claim was filed. Plaintiff's unclean hands as detailed in the Motion to Vacate should also be considered when Plaintiff comes to Court asking to sell Defendant's property which it seized on an *ex parte* basis while complaining about the *custodia legis* expenses which it now must pay.

**III.    Plaintiff, as the attaching party, is responsible for *custodia legis* expenses and all other ramifications of its attachment including, but not limited to, damages for wrongful attachment**

Defendant has filed a motion for assessment of *custodia legis* expenses which Defendant has incurred or will incur in the future as a result of the attachment. The fact that Plaintiff chose to attach the Vessel in Charleston and that, as stated by Plaintiff [D.E. 20-1, pp. 2-3], U.S. Customs requires armed guards onboard the Vessel, is a problem of Plaintiff's own creation. Such facts should not be considered as a justification to sell Defendant's Vessel. Arrangements made with the South Carolina State Ports Authority are for Plaintiff's account and responsibility, not Defendant's, which has been deprived of the use of its property during the pendency of this attachment and is losing approximately $10,000 of revenue every day this attachment stands. Defendant reserves its right to seek damages from the Plaintiff for this wrongful attachment.

**CONCLUSION**

Plaintiff has not established any of the requirements necessary to obtain an interlocutory sale of the Vessel. Plaintiff does not dispute that it is responsible for all *custodia legis* expenses which have accrued and will continue to accrue as a result of its attachment. The *custodia legis* expenses are commensurate with costs associated with removing a commercial vessel from service by judicial process, and they represent a modest percentage of Plaintiff's own valuation of the Vessel. Plaintiff's premature request for an interlocutory sale of the Vessel should be denied and Plaintiff should be required to pay all *custodia legis* expenses incurred to date and to be incurred in the future.

Respectfully submitted, this 28th Day of February 2020 at Charleston, South Carolina.

|   | WOMBLE BOND DICKINSON (US) LLP  /s/ Ryan Gilsenan Ryan D. Gilsenan, Fed ID No. 9837 Sean D. Houseal, Fed ID No. 7676 5 Exchange Street / P.O. Box 999 Charleston, South Carolina 29401 (843) 720-4617 Email: Ryan.Gilsenan@wbd-us.com Sean.Houseal@wbd-us.com  Thomas L. Tisdale (*Pro Hac Vice*) Timothy J. Nast (*Pro Hac Vice*) Tisdale Law Offices, LLC 200 Park Avenue, Suite 1700 New York, New York 10166 (212) 354-0025 Email: ttisdale@tisdale-law.com tnast@tisdale-law.com  *Counsel for the Defendant Smooth Navigation S.A.* |
|---|---|