# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**
**IN ADMIRALTY**

Carl Schröter GmbH & Co. KG,

                Plaintiff,

vs.

Smooth Navigation S.A.,

                Defendant.

Case No. 2:20-cv-334-RMG

---

Praxis Energy Agents LLC,

                Intervening Plaintiff,

vs.

M/V EVOLUTION, IMO No. 9122899, her
engines, freights, apparel, appurtenances,
tackle, etc., *in rem*, Smooth Navigation S.A.,
and Beta Maritime Corporation, *in personam*,

                Defendants.

## VERIFIED COMPLAINT IN INTERVENTION

      COMES NOW, Intervening Plaintiff, Praxis Energy Agents LLC (hereinafter "PRAXIS" or "Plaintiff"), by and through its undersigned counsel, hereby files this Verified Complaint against the Defendant M/V EVOLUTION, IMO No. 9122899, her engines, freights, apparel, appurtenances, tackle etc. *in rem* (hereinafter "EVOLUTION" or the "Vessel") and against Defendants Smooth Navigation S.A. (hereinafter "SMOOTH NAVIGATION") and Beta Maritime Corporation (hereinafter "BETA MARITIME"), *in personam* and avers and pleads as follows:

# I. JURISDICTION, VENUE AND PARTIES

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Subject matter jurisdiction of this Honorable Court is based upon admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is brought under the provisions of Rule B and Rule C of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions (hereinafter "Supplemental Rules"). In addition, subject matter jurisdiction of this Honorable Court is based upon admiralty and maritime jurisdiction pursuant to §31341 of the Commercial Instruments and Maritime Lien Act, 46 U.S.C. §§ 31301-31343, and is brought under the provisions of Rule C of the Supplemental Rules.

2.    Venue is proper and is founded on the presence of the M/V EVOLUTION, which is currently at anchor and within the District.

3.    Plaintiff, PRAXIS, is a Texas limited liability company with its principal place of business in Houston, Texas, located at 1725 Hughes Landing Blvd., Suite 890, The Woodlands, TX 77380 and engaged in the business of providing maritime necessaries to ships, namely bunkers and lubricants.

4.    Defendant M/V EVOLUTION ("Vessel") was and is an ocean-going chemical/oil products tanker, registered in Liberia, IMO number 9122899, call sign D5HM9, and is now, or will be during the pendency of this action, within the District of South Carolina, and subject to the jurisdiction and venue of this Honorable Court. Upon information and belief, the Vessel's registered owner is SMOOTH NAVIGATION and her commercial manager is BETA MARITIME.

5.    SMOOTH NAVIGATION was and still is a foreign business that is the registered owner of the M/V EVOLUTION.

6.       BETA MARITIME was and still is a foreign business that is the ship manager, commercial manager, and ISM manager for the M/V EVOLUTION.

## II. <u>FACTS</u>

7.       PRAXIS brings this action in order to recover amounts indisputably due and owing to it for the supply of necessaries supplied to the Vessel, *i.e.* bunkers and/or lubricants delivered to the Vessel pursuant to three (3) supply contracts.

8.       On or about December 23, 2019, BETA MARITIME engaged PRAXIS to supply bunkers to the Vessel of 400 MT of "VLSFO 0.5%" at the Port of Vitoria, in Brazil (hereinafter the "First Bunker Supply Contract"). A copy of the Bunker Nomination is attached hereto as **Exhibit 1**.

9.       The First Bunker Supply Contract incorporates PRAXIS' General Terms and Conditions for the Sale of Marine Bunker Fuels and Lubricants.   A copy of PRAXIS' General Terms and Conditions for the Sale of Marine Bunker Fuels and Lubricants is attached hereto as **Exhibit 2**.

10.      The Bunker Nomination for the First Bunker Supply Contract provided that payment for the supply of bunkers are due within forty-five (45) days from the date of delivery. *See* **Exhibit 1**.

11.      The agreement for the supply of bunkers was for the account of buyers "M/V EVOLUTION (IMO: 9122899) and/or Smooth Navigation SA and/or Master and/or Owner and/or Managers and/or Operators and/or Beta Maritime Corporation [at] 57 Akti Miaouli Street, Piraeus, 18536, Greece." *See* **Exhibit 1**.

12.      PRAXIS delivered the bunkers to the Vessel at the Port of Vitoria, on or about December 26, 2019, as set out in the Bunker Delivery Note.   A copy of the Bunker Delivery

Note is attached hereto as **Exhibit 3**. The Bunker Delivery Note bears the signature of the Vessel's authorized representative. *Id*.

13. By signing the Bunker Delivery Note, the authorized representative acted on behalf of the Vessel and her owner and/or operator and/or charterer to procure bunkers and accepted them for the Vessel.

14. The bunkers delivered to the Vessel were necessary to the accomplishment of her mission; to wit: trade worldwide as a commercial ship.

15. On December 26, 2019, PRAXIS submitted an invoice numbered "23253-REVISED" for the delivery of bunkers to the Vessel for the total amount of USD 260,883.30. Payment of the invoice was due on January 23, 2020. A copy of the Invoice is attached hereto as **Exhibit 4**.

16. To date, SMOOTH NAVIGATION and BETA MARITIME have failed, neglected, and/or refused to remit full payment in breach of the First Bunker Supply Contract for the amount totaling USD 260,883.30.

17. On or about January 9, 2020, BETA MARITIME engaged PRAXIS to supply lubricants to the Vessel, consisting of Marbrax CID 570 Marbrax CID 54, Marbrax CCD 330 Marbrax CCD 330, and Lubrax Extra Turbo15W40 Lubrax Hydra HV 68 at the Port of San Sebastiao, in Brazil (hereinafter the "Lubricant Supply Contract"). A copy of the Bunker Nomination is attached hereto as **Exhibit 5**.

18. The Lubricant Supply Contract incorporates the same PRAXIS' General Terms and Conditions for the Sale of Marine Bunker Fuels and Lubricants. *See* **Exhibit 2**.

19. The nomination for the Lubricant Supply Contract provided that payment for the supply of lubricants are due within sixty (60) days from the date of delivery. *See* **Exhibit 5**.

20.    The agreement for the supply of lubricants was for the account of buyers "M/V EVOLUTION (IMO: 9122899) and/or Smooth Navigation SA and/or Master and/or Owner and/or Managers and/or Operators and/or Beta Maritime Corporation [at] 57 Akti Miaoulu Street, Piraeus, 18536, Greece." *Id*.

21.    PRAXIS timely delivered the lubricants to the Vessel at the Port of San Sebastiao, on or about January 10, 2020, as set out in the Delivery Receipt.  A copy of the Delivery Receipt is attached hereto as **Exhibit 6**. The Delivery Receipt bears the signature of the Vessel's authorized representative.  *Id*.

22.    By signing the Delivery Receipt, the authorized representative acted on behalf of the Vessel and her owner and/or operator and/or charterer to procure lubricants and accepted them for the Vessel.

23.    The lubricants delivered to the Vessel were necessary to the accomplishment of her mission; to wit: trade worldwide as a commercial ship.

24.    On January 11, 2020, PRAXIS submitted an invoice numbered "23289" for the delivery of the lubricants to the Vessel for the total amount of USD 10,778.00.  Payment of the invoice was due on March 7, 2020.  A copy of the Invoice is attached hereto as **Exhibit 7**.

25.    To date, SMOOTH NAVIGATION and BETA MARITIME have failed, neglected, and/or refused to remit partial or full payment in breach of the Lubricant Supply Contract for the amount totaling USD 10,778.00.

26.    On or about January 23, 2020, BETA MARITIME engaged PRAXIS to supply bunkers to the Vessel of marine gas oil (DMA Max. 0.1%,).  The contract also included fees for a barging charge and booming fee at the Port of Charleston, South Carolina. (hereinafter the "Second Bunker Supply Contract"). A copy of the Bunker Nomination is attached hereto as

**Exhibit 8**.

27.     The Second Bunker Supply Contract also incorporates PRAXIS' General Terms and Conditions for the Sale of Marine Bunker Fuels and Lubricants.  *See* **Exhibit 2**.

28.     The Bunker Nomination for the Second Bunker Supply Contract provided that payment for the supply of bunkers are due within thirty (30) days from the date of delivery.  *See* **Exhibit 8**.

29.     The agreement for the supply of bunkers was for the account of buyers "M/V EVOLUTION (IMO: 9122899) and/or Smooth Navigation SA and/or Master and/or Owner and/or Managers and/or Operators and/or Beta Maritime Corporation [at] 57 Akti Miaoulu Street, Piraeus, 18536, Greece." *See* **Exhibit 8**.

30.     PRAXIS timely delivered the bunkers to the Vessel at the Port of Charleston, on or about February 1, 2020, as set out in the Bunker Delivery Note.  A copy of the Bunker Delivery Note is attached hereto as **Exhibit 9**. The Bunker Delivery Note bears the signature of the Vessel's authorized representative.  *Id*.

31.     By signing the Bunker Delivery Note, the authorized representative acted on behalf of the Vessel and her owner and/or operator and/or charterer to procure bunkers and accepted them for the Vessel.

32.     The bunkers delivered to the Vessel were necessary to the accomplishment of her mission; to wit: trade worldwide as a commercial ship.

33.     On February 1, 2020, PRAXIS submitted an invoice numbered "23320" for the delivery of bunkers to the Vessel for the amount totaling USD 41,698.54.  Payment of the invoice was due on February 29, 2020.  A copy of the invoice is attached hereto as **Exhibit 10**.

34.　To date, SMOOTH NAVIGATION and BETA MARITIME has failed, neglected, and/or refused to remit payment in breach of the Second Bunker Supply Contract for the amount totaling USD 41,698.54.

35.　Pursuant to Clause 12.01.4 of PRAXIS' Terms and Conditions, the Buyer is obligated to pay PRAXIS "default interest/late payment charges at the rate of 2.5% per month on the principal amount due from the due date of payment to the date of actual full payment of the principal, without prejudice to [PRAXIS'] right to claim full payment forthwith." *See* **Exhibit 2**, p. 4.

36.　Pursuant to Clause 12.01.10 of PRAXIS' Terms and Conditions, the Buyer agrees to pay "[t]he full legal and other costs and expenses incurred by [PRAXIS] including those of [PRAXIS'] own legal department and of other lawyers it may employ in connection with any breach by the Buyer of any term of the [a]greement." *See* **Exhibit 2**, p. 5.

37.　Between January 23, 2019 and March 10, 2020, USD 663.25 in interest and late charges accrued for the outstanding amount due and owing on the M/V EVOLUTION under the three (3) supply contracts for bunkers and lubricants.

38.　Accordingly, the total amount remaining due and owing to PRAXIS as a result of the failure to pay for the respective bunkers and lubricants under the First Bunker Supply Contract, the Lubricant Supply Contract, and Second Bunker Supply Contract delivered to the Vessel, is USD 313, 359.84, plus costs, fees, and interest. Outstanding late fees and interest have accrued on the outstanding balance in the amount of USD 663.25.

39.　Pursuant to Clause 22.01, the contract for the sale of bunkers and lubricants to the Vessel are governed by general maritime the laws of the United States. *See* **Exhibit 2**, p. 7. Accordingly, PRAXIS may and does now seek enforcement of a maritime lien for the supply of

necessaries, *i.e.*, bunkers and lubricants, under the provisions of 46 U.S.C. §§ 31341 *et seq.*[1]

## III. REQUEST FOR RULE C ARREST AND ISSUANCE OF WARRANT OF ARREST

40.  Plaintiff repeats and re-alleges paragraphs 1-39 in the above and foregoing Verified Complaint in Intervention, and for its further and additional admiralty *in rem* claims against the Defendants, alleges and pleads as follows:

41.  Clause 10 of the General Terms and Conditions provides that "the sale of Products to the Buyer and/or their acceptance on the Vessel create a maritime lien over the Vessel for the price of the Products, such maritime lien afforded to the Company over the Vessel." *See* **Exhibit 2**, p. 3.

42.  As a result of the failure to pay the amounts owed to Plaintiff for the bunkers and lubricants supplied to the Vessel, Plaintiff's claim for the amount of **USD 313,359.84**, attaches as a maritime lien on the Vessel in favor of Plaintiff and is enforceable against the Vessel *in rem* under the provision of 46 U.S.C. § 31341 *et seq*.

43.  Plaintiff also seeks its applicable costs, fees, and interest in this matter.  It is common in Rule C arrest cases for the security to be set at one and a half (1.5) times of the fairly stated claim, and therefore Plaintiff seeks an Order of Arrest of the Vessel in the amount of **USD 470,000.00**. *See* Supplemental Rule E (5) (permitting substitute security up to twice the amount of Plaintiff's fairly stated claim to cover interest, costs, and fees, etc.).

---

[1] On January 30, 2020, Carl Schröter GmbH & Co. KG, (hereinafter "Carl Schröter") commenced a Rule B attachment action in this District and sought to attach the M/V EVOLUTION within this District. *See Carl Schröter GmbH & Co. KG v. Smith Navigation S.A.*, No. 2:20-cv-00334-RMG (D. S.C. 2020). On January 31, 2020, U.S. District Judge Richard G. Gergel issued an order to attach the Vessel within the District.  To date, the Vessel remains under attachment within the District. PRAXIS's maritime lien claim against the Vessel for unpaid bunkers has priority over Carl Schröter's Rule B attachment claim. *See United States v. One (1) 254 Ft. Freighter, the M/V Andoria*, 570 F. Supp. 413, 415 (E.D. La. Aug. 11, 1983) (ranking order of priority and listing maritime liens with a higher priority than attachment liens).

44.     Accordingly, Plaintiff seeks to enforce its maritime lien, pursuant to Rule C of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions.

## IV. REQUEST FOR RULE B ATTACHMENT AND ISSUANCE OF WRIT OF MARITIME ATTACHMENT AND GARNISHMENT

45.     PRAXIS restates and re-alleges paragraph 1 – 44 in the above foregoing Verified Complaint in Intervention.

46.     Defendants SMOOTH NAVIGATION and BETA MARITME have failed, neglected, and/or refused to remit the amounts due and owing for the supply of bunkers and lubricants to the Vessel in breach of the three (3) aforementioned supply contracts and PRAXIS' General Terms and Conditions for the Sale of Marine Bunker Fuels and Lubricants. Accordingly, PRAXIS's claims against Defendants for breach of the three (3) said contracts is a maritime claim.

47.     The three (3) contracts are governed by general maritime law of the United States. *See* **Exhibit 2**, Clause 22.

48.     Defendants SMOOTH NAVIGATION and BETA MARITIME are not present or cannot be found in the District of South Carolina within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims of the Federal Rules of Civil Procedure. Furthermore, none of the officers of Defendants SMOOTH NAVIGATION and BETA MARITIME are within the District; Defendants SMOOTH NAVIGATION and BETA MARITIME do not maintain offices or telephone listings in the District. Defendants SMOOTH NAVIGATION and BETA MARITIME are not incorporated or registered to do business in the State of South Carolina; and Defendants do not have a registered agent(s) for the receipt of service of process in the State of South Carolina. A copy of the Attorney Declaration is attached hereto as **Exhibit 11**.

49.     The M/V EVOLUTION is the property of Defendants SMOOTH NAVIGATION and is located within the District and subject to attachment and garnishment pursuant to Rule B.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff PRAXIS prays as follows:

A.      That Process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction, be issued against Defendants, and Defendants be cited to appear and answer the allegations of this Verified Complaint in Intervention.

B.      That the Honorable Court enter an order of *in rem* arrest for M/V EVOLUTION pursuant to Rule C of the Supplemental Rules to enforce Plaintiff's maritime lien and that the Vessel be seized by the U.S. Marshal to be held as security against any judgment to be entered herein;

C.      That if Defendants SMOOTH NAVIGATION and BETA MARITIME cannot be found within the District, then all of their respective property within this District, tangible or intangible, including but not limited to M/V EVOLUTION, owed by or in the hands or control of persons named as garnishees in the Process of Maritime Attachment and Garnishment be attached and seized pursuant to Rule B of the Supplemental Rules;

D.      That judgment be entered in favor of Plaintiff and against the Defendant M/V EVOLUTION, her engines, freights, apparel, appurtenances, tackle etc. *in rem*, for the amount pled herein as well as for interest, costs, attorney fees, and disbursements for this action;

E.      That judgment be entered against Defendants in the sum of **USD 313,359.84**, plus applicable interest, costs, and fees pled herein;

F.      That the Court grant Plaintiff such other and further relief as may be just, equitable, and proper.

Dated: March 12, 2020
   Mt. Pleasant, South Carolina

Respectfully Submitted:

COOPER & BILBREY, P.C.

By: /s/John Hughes Cooper
JOHN HUGHES COOPER, ESQUIRE
 Federal Court ID 298
 South Carolina Bar 1387
 State Bar of Georgia 185986
 shiplaw@jhcooper.com
JOHN TOWNSEND COOPER, ESQUIRE
 Federal Court ID 10172
 South Carolina Bar 76087
 jtc@jhcooper.com
ALBERT GLEN BILBREY, JR., ESQUIRE
 Federal Court ID 12938
 South Carolina Bar 103799
 agbilbrey@jhcooper.com
1476 Ben Sawyer Blvd., Suite 11
Mt. Pleasant, SC 29464
843-883-9099; fax 843-883-9335

*Attorneys for Intervening Plaintiff*

OF COUNSEL

Chalos & Co, P.C.
George M. Chalos, Esq.
Briton P. Sparkman, Esq.
55 Hamilton Avenue
Oyster Bay, NY 11771
*Pro Hac Vice Application Forthcoming*

11

# EXHIBIT 1



1725 Hughes Landing Blvd., Suite 890
The Woodlands, TX 77380, USA
TEL: +1 713.622.0600 FAX: +1 713.622.0609 EMAIL:HOUSTON@PRAXISENERGYAGENTS.COM

## BUNKER NOMINATION

CONTRACT NUMBER:  23253

**CONTRACT DATE:**  23 December 2019

**BUYER:**

M/V EVOLUTION (IMO: 9122899)
AND/OR SMOOTH NAVIGATION SA
AND/OR MASTER AND/OR OWNER AND/OR
MANAGERS AND/OR OPERATORS
AND/OR BETA MARITIME CORPORATION
57 AKTI MIAOULI STREET
PIRAEUS,  18536
GREECE

**TO:**  BETA MARITIME CORPORATION
**ATTENTON:**  CAPT D LOIS
**PREPARED BY:**  MANOLIS MANOLAS

ACTING AS CONTRACTUAL 'SELLERS' AND IN ACCORDANCE WITH THE INSTRUCTIONS RECEIVED FROM THE PURCHASER, "M/V EVOLUTION (IMO: 9122899)" AND OWNERS, WE CONFIRM THE FOLLOWING BUNKER STEM. THIS TRANSACTION IS COVERED BY OUR STANDARD TERMS AND CONDITIONS, A COPY OF WHICH IS IN YOUR POSSESSION. IF YOU HAVE NOT RECEIVED A COPY, ONE IS AVAILABLE IMMEDIATELY UPON REQUEST OR VIA OUR WEBPAGE AT HTTP://WWW.PRAXISENERGYAGENTS.COM. THE ACCEPTANCE OF MARINE FUELS, LUBRICANTS AND/OR SUPPLIES BY THE NOMINATED VESSEL SHALL BE DEEMED TO CONSTITUTE THE CLEAR ACCEPTANCE OF OUR STANDARD TERMS AND CONDITIONS, WHICH INCLUDE EXPRESSLY SELLER'S MARITIME LIEN RIGHTS.

| | |
|---|---|
| **SELLER / SUPPLIER:** | PRAXIS ENERGY AGENTS L.L.C. |
| **BDR / BARGE OPERATOR:** | PETROBRAS - PETROLEO BRASILEIRO S.A. |
| **VESSEL:** | M/V EVOLUTION (IMO: 9122899) |
| **PORT OF DELIVERY:** | VITORIA |
| **DELIVERY DATE:** | PROMPT, AS SOON AS POSSIBLE |
| **EXTRA CHARGES:** | OVERTIME, TAXES, PORT & TERMINAL DUES., FOR BUYERS' ACCOUNT IF INCURRED |
| **OBSERVERS:** | OPERATIONS TO BE WITNESSED BY THE VESSEL'S REPRESENTATIVE. |
| **AGENTS:** | SEAWAY- AGENCIA MARITIMA<br>RUA ALBERTO OLIVEIRA SANTOS, 42<br>SALA 1709, CENTRO, VITÓRIA/ ES<br>CEP: 29010-250<br>PHONE - 55 27 3323 0841<br>PIC:  MR PEDRO MELO<br>MOBILE - 55 27 999 326 022<br>SEAWAY@SEAWAYVIX.COM.BR; |
| **TERMS OF PAYMENT:** | WITHIN 45 DAYS DUE NET FROM DATE OF DELIVERY VIA WIRE TRANSFER AGAINST ORIGINAL INVOICE AND DELIVERY RECEIPT(S) |

| Product ID / Description | Quantity / UOM | Net Price / Qty |
|---|---|---|
| VLSFO 0.5% | 400.000 MT | USD 653.00 / MT |

1. THE ABOVE NOMINATION IS SUBJECT TO LOCAL SUPPLIER RECONFIRMATION;
2. ALL BUNKER ORDERS PROVIDED TO STATE OWNED SUPPLIERS' ARE EXECUTED SUBJECT TO THE STRICT COMPLIANCE WITH THEIR "GENERAL TERMS & CONDITIONS OF BUNKER OIL SALES".  CONSEQUENTLY, OUR CORPORATION CANNOT BE HELD ACCOUNTABLE FOR ANY DISPUTE(S) RELATED TO AN INSUFFICIENT DELIVERY; NOTWITHSTANDING IF THIS IS A DELAY, QUANTITY OR QUALITY ISSUE, DUE TO THE AFORESAID OBLIGATORY PROVISIONS APPLICABLE VIA THEIR MONOPOLIZING SERVICE(S);
3. IF VESSEL ARRIVES OUTSIDE EARLIEST ETA DATE, THEN THE NOMINATION IS ON A BEST EFFORT BASIS

E&OE



1725 Hughes Landing Blvd., Suite 890
The Woodlands, TX 77380, USA
TEL: +1 713.622.0600 FAX: +1 713.622.0609 EMAIL:HOUSTON@PRAXISENERGYAGENTS.COM

## BUNKER NOMINATION

CONTRACT NUMBER: 23253

ONLY;
4. THE ABOVE PRICES ARE VALID FOR DELIVERY WITHIN FIFTEEN (15) RUNNING DAYS FROM THE NOMINATION DATE;
5. MEASUREMENTS OF THE BARGE'S TANKS SHOULD BE TAKEN PRIOR AND AFTER THE BUNKERING OPERATION, AND THE FIGURES OBTAINED THEREIN SHALL BE THE ONLY ONES TO BIND ALL PARTIES FOR THE FINAL DETERMINATION OF QUANTITY DISPUTES;
6. THE SEALED REPRESENTATIVE SAMPLE TAKEN DURING THE BUNKERING OPERATIONS, FROM THE BARGE'S MANIFOLD

# EXHIBIT 2



**Worldwide Marine Oil Suppliers**

---

**GENERAL TERMS AND CONDITIONS FOR THE SALE OF MARINE BUNKER FUELS AND LUBRICANTS**

---

<u>EFFECTIVE FROM JUNE 30TH 2019</u>

1.00  **INTRODUCTORY**  These terms and conditions, which can be found also at www.praxisenergyagents.com are the general standard terms and conditions under which each of the companies stated in the Schedule below (each one hereinafter referred to herein as the "Company" is prepared to enter agreement (the "Agreement") with another party (the "Buyer") to supply to the Buyer marine bunkers, and/or lubricants and/or other products.  These terms and conditions are referred to herebelow as "these Conditions". Each Agreement for the sale of Products (as hereinafter defined) shall be governed by the specific terms negotiated and agreed between the Company and the Buyer as evidenced by the Company's nomination confirmation  sent by facsimile or e-mail message (the "Nomination Confirmation") and by these Conditions; in the event of any conflict between these Conditions and the terms of the Nomination Confirmation, the terms of the latter shall prevail.

2.00  **DEFINITIONS**
2.01  **Agreement**  As defined in Clause 1.00 above.
2.02  **Basic Cost**  The basic cost of Product calculated by multiplying the Unit Price by the quantity of Product delivered to the Vessel.
2.03  **Nomination Confirmation**  As defined in clause 1.00 above.  The Nomination Confirmation dispatched by the Company prior to delivery and not contested in writing by the Buyer clearly before the delivery of the Product to the Vessel, shall be conclusive evidence, among others, of (i) the order for the Product placed by the Buyer, (ii) the identity of the Buyer and (iii) the price and other details of the delivery of the Product. All the party(ies) stated in the relevant Bunker Nomination as buyer(s) shall be deemed to be the Buyer of the respective Product on a joint and several basis, without prejudice to the other terms and conditions of this Agreement.
2.04  **Buyer**  Jointly and severally, in any event the registered and the disponent owner of the Vessel, including any lessor and (as the case may be) the manager of the Vessel, her demise/bareboat charterer, lessee and any other party which has contracted with the Company for the particular supply of Product and is stated as a buyer in the Nomination Confirmation. The manager of a Vessel shall, unless it otherwise expressly advises the Company in writing before the latter despatches its Nomination Confirmation, be deemed as acting for the owner of the Vessel and on its own behalf, on a joint and several basis.
2.05  **Company**  Includes in addition to the Company itself, its servants, agents, assigns, sub contractors, and any and all other persons acting under the Company's instructions in fulfilment, compliance or observance of this Agreement, unless the context otherwise requires.
2.06  **Delivery**  As defined in Clause 8.00 below.
2.07  **Due Date**  The date specified in the Nomination Confirmation for payment of the Price and all other fees, costs, charges and like items.
2.08  **Gender, Singular and Plural**  Unless the context otherwise requires, all references in these Conditions  to one gender shall be deemed to include all others and references to the singular shall be deemed to include the plural vice versa.
2.09  **Physical Supplier**  The party which physically supplies the Product to the Vessel together with that party's servants, agents, successors, sub-contractors and assigns.  The Physical Supplier may be the Company or any other party whatsoever.
2.10  **Port of Supply**  The port or other readily identifiable geographical location specified in the Nomination Confirmation wherein or adjacent to which is the Point of Delivery.
2.11  **Point of Delivery**  The precise place at which Delivery is to be effected as provided  in the Nomination Confirmation or as thereafter confirmed, advised or revised by the Company or the Physical Supplier being a berth, mooring, anchorage or other point within, adjacent to or associated with the Port of Supply.
2.12  **Price**  As defined in Clause 11.00 below.
2.13  **Product**  The fuels, bunkers, oils, lubricants, goods, items, equipment  and materials of whatever type and description as specified in the Nomination Confirmation.
2.14  **Unit Price**  The rate of cost in United States Dollars (or such other currency as expressly specified in the Nomination Confirmation) per metric tonne (or such other unit of measurement as expressly specified in the Nomination Confirmation) or Product as specified in the Nomination Confirmation.
2.15  **Vessel**  The vessel, ship or craft duly nominated to receive Product as specified in the Nomination Confirmation.
2.16  **Written, in Writing and Notice**  Any requirement for written communication including the giving of any notice may be fulfilled by the use of letter-post, courier,  facsimile transmission or any other medium which produces a tangible result for the intended recipient.  The communication shall be deemed to have been given and received upon completion of transmission for any electrical or electronic medium, within two working days of dispatch for first class inland letter-post, within five working days of dispatch for second class inland letter-post and air mail and on the expiry of the declared or guaranteed time for delivery of any courier or monitored service.

3.00 **HEADINGS** The use of headings and explanatory notes is for convenience and elucidation only.

4.00 **ENTIRETY AND VALIDITY** These Conditions together with the Nomination Confirmation constitute the entire Agreement. No derogation, addition or amendment to the Agreement shall be of any force or effect unless and until expressly confirmed in writing by the Company. If any provision of the Agreement shall to any extent be invalid or unenforceable the remainder of the terms of the Agreement shall not be affected thereby.

5.00 **FORCE MAJEURE** The Company shall not be liable for any failure to fulfil any term or condition of the Agreement if fulfilment has been delayed, hindered or prevented by any circumstances whatsoever which are not within the immediate control of the Company including but without limiting the generality of the foregoing, any strike, lockout or labour dispute or reasonable apprehension thereof, any governmental order, request or restriction, any limitation restriction or interruption to existing or contemplated sources of supply of Product or the means of supply thereof.

6.00 **BROKERS AND AGENTS**
6.01 Unless the party with whom the Company is corresponding specifically declares to the Company prior to dispatch by the Company of the Nomination Confirmation that the party with whom the Company is corresponding is not the Buyer and at the same time provides to the Company the full name and address of the Buyer, then the party with whom the Company is corresponding shall be deemed to be the Buyer.
6.02 Without prejudice to the provisions of clause 6.01 in the event that the party with whom the Company is corresponding is an agent of the Buyer, then the party with whom the Company is corresponding shall be jointly and severably liable with the Buyer to perform all the Buyer's obligations under the Agreement notwithstanding that the party with whom the Company is corresponding purports to contract as a mere agent.
6.03 In any event the registered and disponent Owners and the Managers of the Vessel shall always be responsible jointly and severally with any other liable party.

7.00 **ASSIGNMENT** The Buyer shall not assign its interest (rights and/or obligations) in the Agreement without the prior express written approval of the Company. The Company may assign its rights and/or obligations under the Agreement and shall thereafter give notice thereof to the Buyer in writing.

8.00 **DELIVERY**
8.01 **Allocation** If the Company at any time and for any reason, believes that there may be a shortage of Product at the Port of Supply it may allocate its available and anticipated supply of Product among its Buyers in such a manner as it may in its absolute discretion determine.
8.02 **Restrictions** The Company shall not be required to deliver Product into any of the Vessel's tanks or other places which are not regularly used for storage of bunkers or lubricants or other products as the case may be and shall not be required to deliver any Product for the export of which a Government permit is required and has not been obtained by the Buyer.
8.03 **Means of the Delivery** Delivery shall be effected in one or more consignments at the Point of Delivery by such means as the Company shall deem appropriate in the circumstances.
8.04 **Barging** In the event of delivery by barge, the Buyer shall at its own expense provide a clear and safe berth for the barge(s) alongside the Vessel's receiving lines and shall provide all necessary facilities and assistance required to effect delivery. The Buyer agrees to pay and fully indemnify the Company against all claims and expenses in respect of any loss, damage or delay caused by the Vessel to any barge and/or its equipment.
8.05 **Connection** The Buyer shall make connection between the pipelines or delivery hoses and the Vessel's intake line and shall render all other necessary assistance and provide sufficient tankage and equipment to receive promptly each and every consignment of the Delivery. The Buyer is responsible for ensuring that the Product is delivered at a safe rate and pressure and that all equipment utilised therefor is in a safe and satisfactory condition.
8.06 **Title/Retention of Ownership** Delivery shall be deemed complete when the Product has passed the flange connecting the Physical Supplier's delivery facilities with the receiving facilities provided by the Buyer. However, the ownership of the Product shall pass to the Buyer only after the Price has been received by the Company in full as provided in Clause 12.01. Until such time as the Price is received in full by the Company, the person in possession of the Product delivered shall hold the Product for the Company as a mere bailee, without charging any charges whatsoever to the Company and store it in such way so that it can be identified as the Company's property; the Product shall remain on the Vessel at Buyer's sole risk and expense.
8.07 **Risk** The Company's responsibility for the Product shall cease and the Buyer shall assume all risks and liabilities relating thereto, including loss, damage, deterioration, depreciation, contamination, evaporation or shrinkage of Product and responsibility for loss, damage and harm caused by pollution or in any other manner to third parties at the time Product leaves the Physical Supplier's fixed depot or wharf facilities. The Buyer agrees to fully indemnify without limit the Company in respect of any liability, claim or demand for which the Buyer is liable.
8.08 **Measurement** The quantity of the Product delivered hereunder shall be determined at the Physical Supplier's option by one of such generally recognised methods of measurement as is appropriate in the circumstances.
8.09 **Specification** The Product to be delivered shall be as specified in the Nomination Confirmation and other than as more precisely specified therein shall be of the Company's commercial grades of Product as currently offered generally to its Buyers at the time and the Point of Delivery for marine bunkering or lubrication purposes. No other warranties, express or implied, as to the quality or the fitness of the Product for any purpose, are given or form part of the Agreement.

8.10 **Compatibility and Segregation** Responsibility for establishing compatibility of the Product delivered with any other product or products and for segregating or co-mingling the same rests solely with the Buyer.

8.11 **Substitution** The Company may discharge its obligation to deliver Product as specified in the Nomination Confirmation by supplying in substitution therefor product of a different grade and/or brand name provided always that such substitute product is of an equivalent or superior specification to that specified in the Nomination Confirmation.

8.12 **Availability** Subject to the availability of Product, the availability of facilities at the Port of Supply and Point of Delivery and the customary priority of mail vessels and tankers, and to the Buyer giving notice in accordance with Clause 8.15, the Company will use its best endeavours to ensure that the Product is delivered promptly upon the Vessel's arrival but the Company shall not be responsible for any loss, expense, damage or increased costs incurred in consequence of the Vessel not being supplied promptly or otherwise being delayed or restrained for any reason whatsoever.

8.13 **Time** The Buyer is responsible for ensuring that the Vessel is ready to receive the Product at the Point of Delivery on the expiry of the notice given in accordance with Clause 8.15.

8.14 **Delay** In the event that the Vessel's arrival at the Point of Delivery is delayed or likely to be delayed the Buyer must so advise the Company without delay. The Buyer should also ensure that the Vessel's agent at the Port of Supply is similarly informed and that the agent advises the Physical Supplier accordingly and without delay. At the Buyer's request the Company will use its best endeavours to supply a delayed Vessel on the terms originally agreed but reserves the right to pass on to the Buyer all additional costs including increased Basic Cost arising from the Vessel's delayed arrival.

8.15 **Notice and Other Delivery Requirements** The Buyer must give not less than 72 hours notice (excluding Saturdays, Sundays, holidays and other non-working days at the Port of Supply) of the Vessel's readiness to receive Product to the Company and to the Physical Supplier. Notice must be given during the Company's normal business hours (Monday to Friday inclusive, 0900-1700 Local time). Notice given outside these hours will be deemed to have been given at 0900 on the first business day thereafter. Furthermore it is in all circumstances and on all occasions the responsibility and duty of the Buyer to ascertain and where appropriate to comply with:

1. the precise requirements of the Physical Supplier and any other person, body or authority in respect of the giving of notice of the Vessel's time of arrival at the Point of Delivery.
2. the exact location of the Point of Delivery
3. any particular requirements to enable Delivery to be effected as efficaciously as possible

The Buyer is advised to instruct its agent at the Port of Supply to liaise with the Physical Supplier so as to ensure compliance with these provisions.

8.16 **Information** In response to a specific request for information from the Buyer in respect of the Point of Delivery the Company will use its best endeavours to obtain or provide the information requested. Whilst every care will be taken to ensure that such information is accurate and up-to-date it is furnished on the strict understanding that It is not a contractual representation and that no responsibility whatsoever will attach to the Company for its accuracy and veracity.

8.17 **Environmental Protection** Without prejudice to Clause 8.07 the Company may at any time without notice take any steps which it considers necessary to protect the environment from damage arising from spillage or transport of Product. Any action so taken shall be on behalf of and at the expense of the Buyer.

9.00 **CANCELLATION AND BREACH** In the event of the Buyer at any time cancelling a request for Product or the Vessel failing to take delivery of part or all of the requested Product the Company shall have the right to pursue a claim against both the Buyer and the Vessel for all loss and damage thereby suffered including loss of profit. The Company may treat any other breach by the Buyer of any express term of the Agreement as a breach of a condition and it may at its discretion thereupon accept the breach, treat the Agreement as repudiated and seek such remedies as it considers appropriate. So however that the provisions of Clauses 15.01,16.01 and 17.01 shall survive the determination of the Agreement in any event.

10.00 **MARITIME LIEN** Where Products are supplied to a Vessel, in addition to any other security, the agreement is entered into and the Products are supplied upon the faith and credit of the Vessel. It is agreed and acknowledged that the sale of Products to the Buyer and/or their acceptance on the Vessel create a maritime lien over the Vessel for the price of the Products, such maritime lien afforded to the Company over the Vessel. In any event any applicable Law shall not prejudice the right of the maritime lien of the Company afforded hereunder or by any other applicable Law, be it of the place of delivery, of the flag of the Vessel, of the place of jurisdiction, and/or of an arrest of the Vessel, or otherwise howsoever. In case the Buyer is not the owner of the Vessel, it hereby expressly warrants that it has the authority of the owner to pledge the Vessel's credit and create a lien upon her as aforesaid and that he has given notice of the provisions of this Clause to the owner. The Company shall not be bound by any attempt by any person to restrict, limit or prohibit its lien or liens attaching to a Vessel, either by clausing the Physical Supplier's delivery receipts or otherwise.

11.00 **THE PRICE**

11.01 **Unit Price** Where in the Nomination Confirmation the Unit Price is stated to be not subject to variation the Unit Price will, subject to clause 8.14, not be varied. In all other cases having agreed the Unit Price of the Product the Company will endeavour to refrain from making any increase. However , the cost of marine bunkering products is volatile and the Company therefore reserves the right to increase the Unit Price at any time before delivery. Notice of the increase will be given during the Company's normal business hours (Monday to Friday inclusive,

0900-1700 Local time).  Notice given outside these hours will be deemed to have been given at 0900 on the first business day thereafter.  In such event the Buyer may forthwith give written notice to the Company of cancellation of the Agreement.  If no such notice is received within one hour of the Company advising the Buyer of the increase of the Unit Cost the Buyer shall be deemed  to have agreed to the revised Unit price and the Agreement so revised shall remain in full force and effect.

11.02  **Further Costs**  In addition to the Basic Cost  of the Product the Buyer agrees to pay for any charges raised in respect of taxes of any kind, freight, barge, vehicle, wagon or clean up costs including overtime or other like payments; insurance; pilotage; port dues  and any and all other like costs and expenses incurred by or charged to the Company.  Such charges, costs and expenses will be passed on to the Buyer at the rates charged to the Company as and when they are advised to the Company and together with the Basic Cost shall for all purposes constitute the Price due from the Buyer to the Company for the Product supplied.

The contracted prices are duty free only on the basis that the nominated vessel previous and next port of call are outside of the country; If the vessel calls an additional internal port prior to or after bunkering the prices will be adjusted substantially higher to cover the applicable duty;

11.03  **Notice of the price**  The Company will give notice of the Price to the Buyer as soon as reasonably practicable after Delivery.  In certain circumstances the Company will give notice of the Price in instalments.  Where notification of the Price is given in instalments each element of the Price so notified shall when due constitute an enforceable debt due from the Buyer to the Company.  Notice of the Price may at the Company's option be provided by invoice sent by post or telex or as otherwise provided herein or as agreed.

11.04  **Proof of delivery**  The Buyer or its representative should attend Delivery and obtain at that time all outstanding information relating to Delivery including the exact quantities and precise specification of the Product delivered.  Unless otherwise requested by the Buyer prior to despatch by the  Company of the Nomination Confirmation the Company shall be under no obligation at any time to produce to the Buyer any evidence of delivery to the Vessel.  It is expressly agreed that the furnishing by the Company of proof of Delivery is not a pre-requisite to payment of the Price.

12.01  **PAYMENT**  In most cases special payment terms will have been agreed and will be set  out in the Nomination Confirmation.  Each of the following terms apply unless the Nomination Confirmation otherwise provides:

1. Payment of  the Price will be made in United States dollars to the bank and account specified in the Nomination Confirmation or the Company's Invoice ("Invoice") in full without deduction for any reason whatsoever so as to ensure that the Company receives  value for the payment in cleared funds on or before the Due Date or such earlier date in the case of Clause 12.01.8.
2. The Due Date is as provided in the Nomination Confirmation.
3. Timely payment is of the essence of the Agreement.
4. In the event of the Buyer not making payment in full by the due date, the Buyer shall be charged and obliged to pay to the Company default interest/late payment charges at the rate of 2.5% per month on the principal amount due from the due date of payment to the date of actual full payment of the principal, without prejudice to the Company's right to claim full payment forthwith. The Buyer hereby agrees and accepts that the quantum of the default interest/late payment charges as calculated hereinabove in this sub-clause, is not a penalty, but constitutes the agreed damages suffered by the Company as a result of the latter being deprived of the timely payment of the principal amount (inclusive of, but not limited to, the element of interest), without prejudice to all other rights and entitlements of the Company under these Conditions or under the applicable Law or otherwise. In the event that the aforesaid contractually agreed rate of default interest/late payment charges  is in excess of that permitted by any applicable Law, it shall be substituted by the maximum rate so permitted.
5. Payment will be made by way of telegraphic, telex, swift or rapid electronic transfer to the bank and account  specified in the Bunker Nomination and/or Invoice.  All bank and other charges, if any, incurred in effecting remittance will be for the account of the Buyer Advice of remittance including identifying references should always be given to the Company.
6. Payments received by the Company from or on the behalf of the Buyer notwithstanding any specific request to the contrary will be applied in the following order in diminution or extinction of :
   1. accrued financial and other charges in respect of transactions for which the principal sum has been previously paid.
   2. accrued financial and other charges arising from all other transactions.
   3. any principal sum or sums due and outstanding commencing with the oldest and proceeding chronologically thereafter to the most recent.
   4. any principal sum which the Company knows or reasonably expects will fall due at a future date.
7. The Company may in good faith vary, amend, withdraw, substitute or add to the terms relating to payment at any time in the course of a transaction in such manner as it shall in its absolute discretion consider necessary to protect its interests.
8. If at any time the reputation, standing, creditworthiness, liquidity or solvency of the Buyer or any principal manager, subsidiary , parent, associate or affiliate of the Buyer should give the Company reasonable cause for concern, the Company may, without prejudice to all other rights and remedies which it may have, give notice to the Buyer that credit facilities from the Company to the Buyer are withdrawn or suspended as the case may be and all sums outstanding shall thereupon fall due for

immediate payment irrespective of any other Due Date previously agreed. Financial charges per Clause 12.01.1 shall incur from the date of the relevant notice being tendered to the Buyer.

9. In the event that the Buyer or any subsidiary or parent thereof shall commit an act of bankruptcy or shall be the subject of proceedings judicial or otherwise commenced for debt, bankruptcy, insolvency, liquidation or winding up, the Company may forthwith terminate any Agreement with the Buyer and/or all credit arrangements in the lines of 12.01.8 above.

10. The full legal and other costs and expenses incurred by the Company including those of the Company's own legal department and of other lawyers it may employ in connection with any breach by the Buyer of any term of the Agreement including but not limited to actions for security or enforcement as well as preaction costs shall be for the Buyer's account, payable by the Buyer and shall for all purposes form part of the Price due from the Buyer to the Company for the Product supplied.

## 13.00    CLAIMS, DISPUTES AND PRECAUTIONS

13.01    **Time Limits:** Because the Company is frequently placed under strict time limits by its suppliers for the presentation of claims it is necessary that it too must impose rigid time limits on receiving notice of claims from its Buyers.  In consequence of the Company's strict time limits, Buyers should ensure that they maintain their own equally strict internal checking and reporting procedures.  It must be clearly understood that the Company will not relax its time-limits in any circumstances.

13.02    **Notification:** Written notice of any claim or potential claim must be given to the Company within the time limit specified.  It is the Buyer's responsibility to ensure that notice is received by the Company whose confirmation of receipt should always be sought.  Regardless of whether a claim or dispute has arisen or is anticipated the Buyer must always give prompt notice to the Company of any discrepancy, error or omission present in any form or document tendered, submitted or produced by the Physical Supplier and of any unusual occurrence relating to the Delivery.

13.03    **Sufficiency of Information:**     To enable the Company to investigate and pursue a claim the notice must be give sufficient information for the Company to be able to identify the relevant transaction , the nature of the complaint and the loss or damage alleged.  Any notice which does not give such sufficient information will not be valid.  For the same reasons the Buyer must provide a full and complete response to any and all questions, enquiries and requests made of it by the Company concerning the claim and matters relating thereto.

13.04    **Categories:**     Claims fall into 3 categories:
1. Quantity claims and disputes
2. Quality claims and disputes
3. Other claims and disputes

1.01    **Quantity Claims and Disputes:** These are most easily avoided by ensuring high standards of checking before, during and after Delivery by an officer of the Vessel's crew or other senior representative of the Buyer.

1.02    For bulk deliveries, delivery barges, wagons and vehicles must be checked by tank-dipping to measure the contents and ensure full out-turn.  Flow meters must be checked for seals, correct settings and calibration and general condition.  All of these checks must be carried out before and after delivery of each consignment and each barge, wagon or vehicle tank load.  The Delivery must be supervised by the Buyer at all times and care must be taken in ensuring that all documentation is complete and accurate before signing and stamping.  Any such discrepancies must be recorded on the Physical Supplier's delivery receipt.    Unless these procedures are followed it is nearly always impossible for a claim to be substantiated.  The Company regrets therefore that it will be obliged to reject claims for short delivery where these receiving procedures are not followed.

1.03    The Company will not accept a claim for short delivery based upon figures obtained by measuring the Product in the Vessel's tank.

1.04    The time limit for receipt by the Company of a notice of a quantity dispute is 7 (seven) running days from the  date of Delivery or such shorter period as is specified in the Bunker Nomination.

2.01    **Quality Claims and Disputes.** It is the Buyer's responsibility to ensure that the Product tendered for Delivery is that which isrequired by the Vessel and is delivered into the correct tanks.

2.02    Three(3) representative samples of every Product consignment  must be taken as Delivery proceeds at barge's or orther delivery mean's manifold by dripping method.  The samples must be signed and sealed by a representative of the Physical Supplier and by an officer of the Vessel or other representative of the Buyer.  One set of samples must be retained by the Buyer, the other by the Physical Supplier and the third for Marpol.

2.03    As with quantity claims it is important to check that all documentation is in order and to note discrepancies on the Physical Supplier's delivery receipt before signing and stamping.

2.04    In the event of the Buyer having grounds to believe that the Product supplied does not accord with the relevant description in the Nomination Confirmation or is defective, the Buyer shall immediately:
1. take all reasonable steps to mitigate the consequences of having been supplied with possibly defective or incorrect Product; and
2. give notice with full details of the possibly defective or incorrect Product to the Company together with the Vessel's position destination and ETA; the quantities and locations of all bunkers on board the Vessel, the rate and quantity of consumption since Delivery and the location immediately prior to consumption of the Product consumed; for each of the three proceeding deliveries to the Vessel, the quantity, quality and

specification of bunkers supplied, the port and date of supply and the name of the supplier; and

3. inform the Company of the whereabouts of the Buyer's set of samples.

2.05    It is a pre-condition of the Company being prepared to consider any quality claim and of the Company being liable therefor, that at the time notice is given, the Buyer has retained its complete set of sealed samples and is prepared to and has them analysed by a reputable independent testing laboratory, approved in writing by the Company, in accordance with established procedures and in the presence of a representative of the Company. In the event that the Buyer is unable or unwilling to produce its samples for analysis within 28 days of a request from the Company to do so, the Company may proceed to have the Physical Supplier's samples analysed and the results of such analysis shall be binding upon the parties hereto. However, if the analysis of any other samples is expressly agreed between the parties, the results thereof shall be those binding.

2.06    If it is alleged that any equipment or machinery has been damaged by defective Product full details must be given  to the Company at the earliest opportunity and the item must be preserved and made available for inspection on demand at any reasonable time or times to the Company or its representative.

2.07    The time limit for receipt by the Company of notice of a quality claim is 7(seven) running days from the date  of Delivery or such shorter period as is specified in the Nomination Confirmation.

3.01    **Other Claims and Disputes:** Notice of all other claims, specifically excluding any and all claims relating to or associated with those relating to matters of quantity or quality which are subject to the time limits set out in sub-clauses 13.04.1 and 13.04.2 above, should be given to the Company as soon as reasonably possible and in any event  no later than 28 running days after Delivery.  If the Bunker Nomination Confirmation provides for a shorter period such shorter period shall apply.

4.01    **Summary of Time Limits:**
       Quantity claims and disputes 7 running days
       Quality claims and disputes  7 running days
          Other claims and disputes 28 running days
all subject to the provision of shorter time limits in the Bunker Nomination.


14.00    **WAIVER**    The failure by any party to the Agreement to enforce any right against any other party shall not be construed as a waiver of that right or in any way affect the validity of the Agreement.  In particular, the granting by the Company of any additional time to make payment or the waiving or reducing of any financial or other charge shall not prevent the Company at any time thereafter from relying upon its strict contractual rights.


15.00    **INDEMNITY**    The Buyer hereby indemnifies the Company in respect of all damage or injury occurring to any person or to any property and against all actions, suits, claims, demands, costs, charges or expenses arising in connection therewith to the extent that the same shall have been occasioned by the negligence or default of the Buyer, its servants or agents or any third party in the course of  performance of or arising out of the Agreement.


16.00  **LIABILITY-LIMITATION TO THE COMPANY'S LIABILITY**    Without prejudice to any other provision in these Conditions:

16.01    Under no circumstances shall the Company or its servants, subcontractors and/or agents be liable for any physical injury or damage, including but without limitation for the consequences of any damage to the Vessel's machinery or equipment caused by the Products which do not correspond to the description ordered by the Buyer.

16.02   The Buyer shall be solely liable for making the hose connections on board the Vessel and generally to accept the Products on board; therefore the liability for any loss or spillage of Products overboard the Vessel shall be solely with the Buyer, the Company or the Physical Supplier not having any liability whatsoever.

16.03   The Company shall, under no circumstances, be liable for loss of hire, income and/or profit or any consequential damages of the Buyer. Where the Company is liable for any delay caused to the Vessel, its liability shall be limited to the proven actual running costs of the Vessel for the period of any such delay (exclusive of any loan/finance servicing costs in relation to the Vessel and/or any other expenses not directly connected to the actual running of the Vessel). Where Products are proven to be off-specifications to the extend of not being able to be used in the Vessel and the Company is liable, the liability of the latter in respect of the value of the replacement product cannot exceed the price of the Products replaced as invoiced by the Company.

16.04   The Company shall not be liable for negligence on the part of its employees, servants and/or agents or on the part of the Physical Supplier and/or its employees, servants and/or agents.

16.05   The Company's liability for any claim whatsoever, whether based in tort or contract, shall be limited to the value of the Products as set out in the Company's Invoice for the particular transaction.

16.06   The Physical Supplier and the employees, representatives, subcontractors, servants and/or agents of the Physical Supplier and/or the Company shall enjoy the benefit of all rights afforded to the Company under these Conditions.


17.00    **COMPENSATION**    Notwithstanding  the foregoing, in the event that the Company is found to be liable to the Buyer , the total amount payable by way of compensation other than in respect of personal injury or death shall not exceed the price charged to the Buyer for the Product supplied under the Agreement.  It is a pre-condition to the payment of any compensation by the Company that all sums standing due to the Company from the Buyer are first paid and settled.

18.00 **INSURANCE** The Buyer is responsible for effecting and maintaining in force adequate insurances which will fully protect the Buyer, the Company and all third parties from all risks, hazards and perils associated with or arising from the Agreement and Delivery.

19.00 **LICENCES PERMITS AND APROVALS** The Buyer is responsible for obtaining all necessary permits, licences and approvals required to enable both parties to execute all of their obligations under the Agreement.

20.00 **NO WARRANTY**
20.01 The Product shall be within the specifications generally offered to the Company's customers at the time and place of delivery.
20.02 The Company makes no warranties of quality (other than what is expressly mentioned herein above) fitness or merchantability with respect to any of the Products and any implied warranties or conditions of whatsoever nature (statutory included) are expressly excluded.
20.03 The Buyer shall have the sole responsibility to select suitable products for his vessel.

21. **MISCELLANEOUS**
21.01 If any provision of these Conditions or the Agreement becomes or is found to be invalid, illegal or unenforceable in respect of any Law, the validity, legality and enforceability of the remaining provisions hereof shall in no way be affected or impaired.
21.02 It is mutually agreed that the Products provided by the Company to the Buyer under the terms of the Agreement have been ordered by the Buyer in the ordinary course of business between Company and Buyer. All payments from the Buyer to the Company for Products supplied under the Agreement are deemed to have been made in the ordinary course of business between the Company and the Buyer, according to these ordinary business terms agreed between them.

22.00 **LAW AND JURISDICTION**
22.01 These Conditions and the Agreement governed by them and/or to which they apply, as well as any disputes, differences, claims and/or other matters relevant hereto, shall be governed by the General Maritime Law of the United States of America.
22.02 Without prejudice to the provisions of clause 22.03 herebelow, any disputes and/or claims arising in connection with these Conditions and/or any agreement governed by them, shall be submitted to the United States District Court for the Southern District of New York.
22.03 For the sole benefit of the Seller, it is further agreed that the Seller, without prejudice to any of its rights, has the right to proceed against the Buyer and/or the Vessel and/or any other party in such jurisdiction worldwide as the Seller in its sole discretion sees fit, inter alia, for the purpose(s) of securing any payment due to it or proceeding in the main or any other proceedings in order to enforce and/or collect any claim or cause the issuance of any Court judgment whatsoever. The Buyer agrees and acknowledges that the nature of the transaction and of the respective business concerned is such, to the effect that the foregoing which are set for the benefit of the Seller, are absolutely reasonable and fully acceptable by the Buyer, which hereby confirms that it will also be liable for all costs of the Seller including but without limitation Attorneys' fees.
22.04 If any proceeding of any nature whatsoever is instituted under Clause 22.02 or 22.03 above, in connection with any controversy arising out of these Conditions or the Agreement or to interpret or enforce any rights under the Agreement, the prevailing party shall have the right to recover from the losing party its reasonable costs and attorneys' fees incurred in such proceeding.


**SCHEDULE** referred in clause 1.00

- PRAXIS ENERGY AGENTS (PTE) LTD. of Singapore
- PRAXIS ENERGY AGENTS LLC of Houston U.S.A.

# EXHIBIT 3



**PETROBRAS**

Petróleo Brasileiro S.A.
Av. Henrique Valadares - 28 - Torre A - 10° andar - Rio de Janeiro - RJ - Brasil
CEP: 20.231-030
Tel: (+ 55 21) 2168-7392
Fax: (+ 55 21) 2168-9221
E-mail: bunker@petrobras.com.br

*Gerência Setorial de Comercialização de Vitória*
Av. Dante Michelini, 5500 – Parque Industrial – Axo Petrobras
CEP 29090-860 – Vitória/ES - CNPJ 33.000.167/0636-18
Tel. (5627) 3235-3480 / 3235-3483.

## Comprovante de Fornecimento a Navio – CFN
## (Bunker Delivery Note – BDN)
## 17265

Preencher com letras de forma - não rasurar
(Fill in with block letters, with no amendment)

| N° do RB (RB no.): | Nome do Navio (Ship's name): | N° IMO do Navio (Ship's IMO no.): |
|---|---|---|
| RB-06516-2019 | EVOLUTION | 9122899 |

| Cliente (Customer): | | Bandeira (Flag): |
|---|---|---|
| PRAXIS ENERGY AGENTS, L.L.C. | | LIBERIA |

| N° do lacre da amostra do navio (Ship's sample seal no.) | N° do lacre da amostra da PETROBRAS (PETROBRAS'S sample seal no.) | N° do lacre da amostra da MARPOL (MARPOL's sample seal no.) |
|---|---|---|
| 11843 | 11839 | 11844 |

| Local de fornecimento (Supply area) | Porto (Port) | Órgão (Origin) |
|---|---|---|
| BERÇO 101 | VITORIA | Dto. TA. ES. OPVIT |

| N° do anexo único/processo (Process no.) | Produto (Grade) |
|---|---|
| 2019 B 717 30 102 | VLSFO 0.5% S |

Quantidade fornecida
(Delivered quantity)

| Volume ambiente (Observed volume) | Volume a 20 °C (Volume at 20 °C) | Quantidade (Quantity) (xxxxx.yyy) |
|---|---|---|
| 434.552 L | 431.162 L | 399,515 MT |

| Densidade a 20 °C (Specific gravity at 20 °C) | Densidade a 15 °C (Specific gravity at 15 °C) | Viscosidade cinemática (Kinematic viscosity) | Ponto de fulgor (Flash point) | Teor de enxofre (Sulphur content) (x.yy) |
|---|---|---|---|---|
| 0.9266 | 0.9298 | 15.2480 cSt at 50 °C | 72.0 °C | 0.4975 % m/m |

Operação (Operation)

| Entrega por (Delivery by) | | Início (Start) | | Término (End) | |
|---|---|---|---|---|---|
| Nome da barcaça (Barge name) | CD LEBLON | Data (Date) (dd/mm/yyyy) | 26.12.2019 | Data (Date) (dd/mm/yyyy) | 26.12.2019 |
| Oleoduto (Pipeline) | | Hora (Time) | 16:50 | Hora (Time) | 19:35 |
| Caminhão (Truck) | | | | | |

Atenção: As reclamações somente serão aceitas quando recebidas dentro de 21 dias corridos da data de entrega.
(Attention: The claims shall only be accepted if received within 21 days from delivery date).

Foi emitida carta protesto (Was a Letter of protest issued)?:    Sim (Yes) [ ✓ ]    Não (No) [ ]

O bunker aqui fornecido atende aos regulamentos 14 (1) e 18 (3) da Marpol 73/78 Anexo VI
(The bunker herein supplied is in conformity with regulations 14 (1) and 18 (3) of Marpol 73/78 Annex VI).

Nomes em letras de forma, Assinaturas e Carimbos
(Names in block letters, Signatures and Stamps)

| Representante do navio (Ship's representative) | Representante da PETROBRAS (PETROBRAS'S representative) | Técnico certificante da alfândega (Custom surveyor) |
|---|---|---|
| M/V EVOLUTION IMO No. 9122899 MONROVIA | Raphael Gigon Barreto 381P201300.3253 | |

As informações deste documento são propriedade da Petrobras, sendo proibida a utilização fora da sua finalidade.
Formulário pertencente à Petrobras N-2652 Rev. E Anexo B - Folha 01/01.

# EXHIBIT 4



1725 Hughes Landing Blvd., Suite 890
The Woodlands, TX 77380, USA
TEL: +1 713.622.0600 FAX: +1 713.622.0609 EMAIL:HOUSTON@PRAXISENERGYAGENTS.COM

# INVOICE

**BUYER:**
M/V EVOLUTION (IMO: 9122899) FLAG: LIBERIA
AND/OR SMOOTH NAVIGATION SA
AND/OR MASTER AND/OR OWNER AND/OR
MANAGERS AND/OR OPERATORS
AND/OR BETA MARITIME CORPORATION
57 AKTI MIAOULI STREET
PIRAEUS, GREECE 18536

**DATE:** 26 December 2019
**INVOICE NUMBER:** 23253-REVISED
**DELIVERY DATE:** 26 December 2019
**PORT OF DELIVERY:** VITORIA

| Product ID / Description | Quantity | Net Price / Qty | Net Value |
|---|---|---|---|
| VLSFO 0.5% | 399.515 MT | USD 653.00 / MT | USD 260,883.30 |
| Total Item Net Value | | | USD 260,883.30 |
| Total | | | USD 260,883.30 |

**DUE DATE:** 23 January 2020     (CREDIT TERMS: **30 DAYS DUE NET FROM DELIVERY DATE**)

AN INTEREST CHARGE OF 2.5% PRO RATA PER MONTH WILL BE LEVIED FOR OVERDUE PAYMENT.

REMITTANCE DETAILS:

SWIFT:
ABA:
ACCOUNT #
IN FAVOR OF: PRAXIS ENERGY AGENTS L.L.C.

PLEASE REMIT FREE OF ALL BANK CHARGES.

E & OE

# EXHIBIT 5



Worldwide Marine Oil Suppliers

1725 Hughes Landing Blvd., Suite 890
The Woodlands, TX 77380, USA
TEL: +1 713.622.0600 FAX: +1 713.622.0609 EMAIL:HOUSTON@PRAXISENERGYAGENTS.COM

# BUNKER NOMINATION

CONTRACT NUMBER:     23289

**CONTRACT DATE:**     9 January 2020

**BUYER:**

M/V EVOLUTION (IMO: 9122899)
AND/OR SMOOTH NAVIGATION SA
AND/OR MASTER AND/OR OWNER AND/OR
MANAGERS AND/OR OPERATORS
AND/OR BETA MARITIME CORPORATION
57 AKTI MIAOULI STREET
PIRAEUS,  18536
GREECE

**TO:**          BETA MARITIME CORPORATION
**ATTENTON:**    CAPT KALAITZIDAKIS
**PREPARED BY:** MANOLIS MANOLAS

ACTING AS CONTRACTUAL 'SELLERS' AND IN ACCORDANCE WITH THE INSTRUCTIONS RECEIVED FROM THE PURCHASER, "M/V EVOLUTION (IMO: 9122899)" AND OWNERS, WE CONFIRM THE FOLLOWING BUNKER STEM. THIS TRANSACTION IS COVERED BY OUR STANDARD TERMS AND CONDITIONS, A COPY OF WHICH IS IN YOUR POSSESSION. IF YOU HAVE NOT RECEIVED A COPY, ONE IS AVAILABLE IMMEDIATELY UPON REQUEST OR VIA OUR WEBPAGE AT HTTP://WWW.PRAXISENERGYAGENTS.COM. THE ACCEPTANCE OF MARINE FUELS, LUBRICANTS AND/OR SUPPLIES BY THE NOMINATED VESSEL SHALL BE DEEMED TO CONSTITUTE THE CLEAR ACCEPTANCE OF OUR STANDARD TERMS AND CONDITIONS, WHICH INCLUDE EXPRESSLY SELLER'S MARITIME LIEN RIGHTS.

| | |
|---|---|
| **SELLER / SUPPLIER:** | PRAXIS ENERGY AGENTS L.L.C. |
| **BDR / BARGE OPERATOR:** | PETROBRAS |
| **VESSEL:** | M/V EVOLUTION (IMO: 9122899) |
| **PORT OF DELIVERY:** | SAN SEBASTIAO |
| **DELIVERY DATE:** | 10 January 2020 |
| **EXTRA CHARGES:** | OVERTIME, TAXES, PORT & TERMINAL DUES., FOR BUYERS' ACCOUNT IF INCURRED |
| **OBSERVERS:** | OPERATIONS TO BE WITNESSED BY THE VESSEL'S REPRESENTATIVE. |
| **AGENTS:** | ARGO AGENCIAMENTOS MARÍTIMOS LTDA.<br>CONTACT: CARLOS EMANOEL CUNHA DE LIMA<br>CELLULAR PHONE: 12 99627-6993<br>ADDRESS: AV.DR.ALTINO ARANTES, 330 SL 02 - CENTRO<br>11608-623 - SÃO SEBASTIÃO / SP - BRASIL<br>TELEPHONE:: +55 12 3892-5689 / +55 12 3893-1932<br>E-MAIL:<br>CARLOS.CUNHA@ARGOAGENCY.COM.BR<MAILTO:CARLOS.CUNHA@ARGOAGENCY.<br>COM.BR |
| **TERMS OF PAYMENT:** | WITHIN 60 DAYS DUE NET FROM DATE OF DELIVERY VIA WIRE TRANSFER AGAINST<br>ORIGINAL INVOICE AND DELIVERY RECEIPT(S) |

| Product ID / Description | Quantity / UOM | Net Price / Qty |
|---|---|---|
| MARBRAX CID 570 MARBRAX CID 54 AP IN 14 DRUMS (200LTRS/DRUM) PRICE PER 100 LTRS | 28.000 EA | USD 197.00 / EA |
| MARBRAX CCD 330 MARBRAX CCD 330 IN 10 DRUMS (200LTRS/DRUM) PRICE PER 100 LTRS | 20.000 EA | USD 222.00 / EA |
| LUBRAX EXTRA TURBO 15W40 LUBRAX HYDRA HV 68 IN 1 DRUM (200LTRS/DRUM) PRICE PER 100 LTRS | 2.000 EA | USD 311.00 / EA |
| SHORT NOTICE FEE | 1.000 EA | USD 200.00 / EA |

1.ALL ABOVE PRODUCT WILL BE DELIVERED IN DRUMS;

E&OE



1725 Hughes Landing Blvd., Suite 890
The Woodlands, TX 77380, USA
TEL: +1 713.622.0600 FAX: +1 713.622.0609 EMAIL:HOUSTON@PRAXISENERGYAGENTS.COM

## BUNKER NOMINATION

CONTRACT NUMBER: 23289

2. ALL LUBRICANT OFFERS ARE SUBJECT TO LOCAL SUPPLIERS RECONFIRMATION, PRODUCT / TRUCK ACCESSIBILITY, WEATHER PERMITTING AND APPLICABLE EXTRAS;
3. NORMALLY 3 WORKING DAYS NOTICE ARE REQUIRED. EARLIEST SUPPLY IS BASED ON STRICTLY BEST ENDEAVOUR BASIS;
4. THE SEALED REPRESENTATIVE SAMPLES TAKEN DURING THE LUBRICANTS OPERATION, FROM THE TRUCK'S MANIFOLD, SHALL BE THE ONLY ONES USED FOR THE DETERMINATION OF QUALITY DISPUTES;
5. QUALITY SPECIFICATIONS TO BE IN ACCORDANCE TO LOCAL SUPPLIER QUALITY;
6. IN CASE OF CANCELLATION FOR ANY REASON, ANY CANCELLATION/PENALTY TO BE AT BUYERS ACCOUNT.

# EXHIBIT 6

**BR PETROBRAS** | *MARINE*

LUBRIFICANTE
*(LUBRICANT)*

**COMPROVANTE DE FORNECIMENTO A NAVIO - CFN**
*(DELIVERY RECEIPT - DR)*
Nº 012/2020

*10/01/2020 08:57*

**PETROBRAS DISTRIBUIDORA S.A.**
*Av. Almirante Delamare, 1335, Heliópolis – São Paulo/SP - CEP 04230-040*

**Abastecimento Marítimo – Bunker & Lubrificantes**
*(Marine Customer Service – Bunker & Lubricants)*
+55 (21) 2354-3025, 2354-2959, 99686-1852, 97212-5338
*marbrax@br.com.br*



**INFORMAÇÕES DO NAVIO E ENTREGA**
*(Vessel and delivery Information)*

| NOME DA EMBARCAÇÃO<br>*(Vessel's name)* | BANDEIRA<br>*(flag)* | Nº IMO<br>*(IMO nº)* | ORDEM NOMEADA POR<br>*(Order requested by)* |
|---|---|---|---|
| EVOLUTION | LIBERIA | 9122899 | ELINOIL-HELLENIC PETROLEUM COMPANY S/A |
| **PORTO DE ENTREGA**<br>*(Port of delivery)* | **LOCAL DE ABASTECIMENTO**<br>*(Supply point)* | **AGENTE DO NAVIO**<br>*(Vessel's Agent)* | **ORDEM**<br>*(Petrobras order)* |
| SÃO SEBASTIÃO | CAIS COMERCIAL | ARGO | 246014170 |

**DESCRIÇÃO DO PRODUTO**
*(Product description)*

| ITEM | PRODUTO<br>*(Product)* | UNID<br>*(Unit)* | PEDIDO<br>*(Ordered)* | FORNECIDO<br>*(Delivered)* | NOTA FISCAL<br>*(Tax Invoice)* |
|---|---|---|---|---|---|
| 1 | MARBRAX CID 54 AP - TB200L | TAMBOR (DRUM) | 14 | 14 | 2436087 |
| 2 | MARBRAX CCD 330 - TB 200 L | TAMBOR (DRUM) | 10 | 10 | 2436087 |
| 3 | LUBRAX HYDRA HV 68 - TB 200 L | TAMBOR (DRUM) | 1 | 1 | 2436087 |

**OPERAÇÃO**
*(Operation)*

| | MÉTODO DE ENTREGA<br>*(Delivery method)* | DATA E HORA DE INÍCIO<br>*(Date and time of Start)* | DATA E HORA DE TÉRMINO<br>*(Date and time of End)* |
|---|---|---|---|
| **ID CAMINHÃO**<br>*(Truck ID)* | DAO 8316 | 11, 01, 20 . 15 : 10 | 11 , 01 , 20 . 16 : 00 |
| **ID BARCAÇA**<br>*(Barge ID)* | | ___/___/___ - ___: ___ | ___/___/___ - ___: ___ |
| **ID BOMBEIO**<br>*(Pump Ex-DRUM Co. ID)* | | ___/___/___ - ___: ___ | ___/___/___ - ___: ___ |

**ATENÇÃO: AS RECLAMAÇÕES, SOMENTE SERÃO CONSIDERADAS, QUANDO RECEBIDAS DENTRO DE 30 DIAS CORRIDOS DA DATA DO FORNECIMENTO.**
*(Attention: claims will only be accepted if received within 30 (thirty) days of delivery date).*

**FOI EMITIDA CARTA PROTESTO** *(Letter of protest was issued):* **SIM** *(Yes)* ☐  **NÃO** *(No)* ☐

| NOME EM LETRA DE FORMA, ASSINATURA E CARIMBO<br>*(Name in block letter, signature and stamp)* | |
|---|---|
| **REPRESENTANTE DO NAVIO**<br>*(Vessel's representative)* | **REPRESENTANTE DA PETROBRAS**<br>*(Petrobras's representative)* |
| | JAIR DE OLIVEIRA<br>Depósito de Lubrificantes-DESSA<br>Petrobras Distribuidora S.A.<br>Matrícula: 022381-0 |

1ª via NAVIO, 2ª via BASE, 3ª via NÚCLEO MARÍTIMO, 4ª via PROCESSO ADUANEIRO

*Ricardo Wagner Conde*
Despachante Aduaneiro
CPF 032.959-678-06
Reg. 8D 02 570

FC-GVMAR-001, Rev.1

# EXHIBIT 7



1725 Hughes Landing Blvd., Suite 890
The Woodlands, TX 77380, USA
TEL: +1 713.622.0600 FAX: +1 713.622.0609 EMAIL:HOUSTON@PRAXISENERGYAGENTS.COM

## INVOICE

| **BUYER:** | | **DATE:** | 11 January 2020 |
|---|---|---|---|
| M/V EVOLUTION (IMO: 9122899) FLAG: LIBERIA | | **INVOICE NUMBER:** | 23289 |
| AND/OR SMOOTH NAVIGATION SA | | **DELIVERY DATE:** | 11 January 2020 |
| AND/OR MASTER AND/OR OWNER | | **PORT OF DELIVERY:** | SAO SEBASTIAO |
| AND/OR MANAGERS AND/OR OPERATORS | | | |
| AND/OR BETA MARITIME CORPORATION | | | |
| 57 AKTI MIAOULI STREET | | | |
| PIRAEUS, GREECE  18536 | | | |

| Product ID / Description | Quantity | Net Price / Qty | Net Value |
|---|---|---|---|
| MARBRAX CID 570 MARBRAX CID 54 AP IN 14 DRUMS (200LTRS/DRUM) PRICE PER 100 LTRS | 28.000 EA | USD 197.00 / EA | USD 5,516.00 |
| MARBRAX CCD 330 MARBRAX CCD 330 IN 10 DRUMS (200LTRS/DRUM) PRICE PER 100 LTRS | 20.000 EA | USD 222.00 / EA | USD 4,440.00 |
| LUBRAX EXTRA TURBO 15W40 LUBRAX HYDRA HV 68 IN 1 DRUM (200LTRS/DRUM) PRICE PER 100 LTRS | 2.000 EA | USD 311.00 / EA | USD 622.00 |
| SHORT NOTICE FEE | 1.000 EA | USD 200.00 / EA | USD 200.00 |
| Total Item Net Value | | | USD 10,778.00 |
| Total | | | USD 10,778.00 |

**DUE DATE:**   7 March 2020          (CREDIT TERMS:  **60 DAYS DUE NET FROM DELIVERY DATE)**

AN INTEREST CHARGE OF 2.5% PRO RATA PER MONTH WILL BE LEVIED FOR OVERDUE PAYMENT.

REMITTANCE DETAILS:

SWIFT:
ABA:
ACCOUNT #
IN FAVOR OF:  PRAXIS ENERGY AGENTS L.L.C.

PLEASE REMIT FREE OF ALL BANK CHARGES.

E & OE

# EXHIBIT 8



1725 Hughes Landing Blvd., Suite 890
The Woodlands, TX 77380, USA
TEL: +1 713.622.0600 FAX: +1 713.622.0609 EMAIL:HOUSTON@PRAXISENERGYAGENTS.COM

## BUNKER NOMINATION

CONTRACT NUMBER: 23320

**CONTRACT DATE:**     23 January 2020

**BUYER:**

M/V EVOLUTION (IMO: 9122899)
AND/OR SMOOTH NAVIGATION SA
AND/OR MASTER AND/OR OWNER AND/OR
MANAGERS AND/OR OPERATORS
AND/OR BETA MARITIME CORPORATION
57 AKTI MIAOULI STREET
PIRAEUS,  18536
GREECE

**TO:**     BETA MARITIME CORPORATION
**ATTENTON:**     CAPT D. LOIS
**PREPARED BY:** MANOLIS MANOLAS

ACTING AS CONTRACTUAL 'SELLERS' AND IN ACCORDANCE WITH THE INSTRUCTIONS RECEIVED FROM THE PURCHASER, "M/V EVOLUTION (IMO: 9122899)" AND OWNERS, WE CONFIRM THE FOLLOWING BUNKER STEM. THIS TRANSACTION IS COVERED BY OUR STANDARD TERMS AND CONDITIONS, A COPY OF WHICH IS IN YOUR POSSESSION. IF YOU HAVE NOT RECEIVED A COPY, ONE IS AVAILABLE IMMEDIATELY UPON REQUEST OR VIA OUR WEBPAGE AT HTTP://WWW.PRAXISENERGYAGENTS.COM. THE ACCEPTANCE OF MARINE FUELS, LUBRICANTS AND/OR SUPPLIES BY THE NOMINATED VESSEL SHALL BE DEEMED TO CONSTITUTE THE CLEAR ACCEPTANCE OF OUR STANDARD TERMS AND CONDITIONS, WHICH INCLUDE EXPRESSLY SELLER'S MARITIME LIEN RIGHTS.

**SELLER / SUPPLIER:**     PRAXIS ENERGY AGENTS L.L.C.
**BDR / BARGE OPERATOR:** COLONIAL FUEL AND LUBRICANT SERVICES INC
**VESSEL:**     M/V EVOLUTION (IMO: 9122899)
**PORT OF DELIVERY:**     CHARLESTON
**DELIVERY DATE:**     30-31 January 2020
**EXTRA CHARGES:**     OVERTIME, TAXES, PORT & TERMINAL DUES., FOR BUYERS' ACCOUNT IF INCURRED
**OBSERVERS:**     OPERATIONS TO BE WITNESSED BY THE VESSEL'S REPRESENTATIVE.
**AGENTS:**     TBA
**TERMS OF PAYMENT:**     WITHIN 30 DAYS DUE NET FROM DATE OF DELIVERY VIA WIRE TRANSFER AGAINST ORIGINAL INVOICE AND DELIVERY RECEIPT(S)

| Product ID / Description | Quantity / UOM | Net Price / Qty |
|---|---|---|
| MARINE GASOIL (DMA MAX. 0.1%) | 50.000 MT | USD 680.00 / MT |
| BARGING CHARGE (LUMPSUM) | 1.000 EA | USD 7618.75 / EA |
| BOOMING FEE (IF APPLICABLE) ($1,000-$2,500) | 1.000 EA | USD 2500.00 / EA |

1. ALL TRUCK DELIVERIES ARE SUBJECT TO TRUCK ACCESSIBILITY.;
2. MEASUREMENTS OF THE BARGE'S TANKS SHOULD BE TAKEN PRIOR AND AFTER THE BUNKERING OPERATION, AND THE FIGURES OBTAINED THEREIN SHALL BE THE ONLY ONES TO BIND ALL PARTIES FOR THE FINAL DETERMINATION OF QUANTITY DISPUTES;
3. DURING BUNKERING OPERATION, NO LESS THAN ONE SEALED REPRESENTATIVE SAMPLE CAN BE TAKEN IN COMPLIANCE WITH THE MARPOL ANNEX VI GUIDELINES; AS LONG AS THEY DO NOT DEFY SAFETY PROCEDURES OR THE PHYSICAL SUPPLIER'S PRACTICING STANDARDS.
4. QUALITY SPECIFICATIONS TO BE IN ACCORDANCE WITH THE INTERNATIONAL STANDARDS AS THOSE SET BY THE INTERNATIONAL STANDARDIZATION ORGANIZATION ISO 8217/2005 (E) AND THE LATEST REGULATIONS OF THE MARPOL ANNEX VI.

E&OE

# EXHIBIT 9

| Delivered To: | M/V EVOLUTION | Agent: | |
|---|---|---|---|
| Barge: | B30 | Next Port of Call: | ORDER· |
| Location: | Charleston, SC | Voyage Destination: | NONE |
| | | Flag: | LEBERIA· |

**Typical Product Analysis:**

| | | | | | | |
|---|---|---|---|---|---|---|
| Density@15C: | 80.0 | Vanadium ppm: | 0 | Cetane: | |
| CST @ 50C: | 837 | Ash %: | 0.00 | Any Implied Warranties Including the |
| B.S.W. %: | 0.00 | CCR %: | 0.0 | Warranties of Merchantability and |
| Flash Deg F: | 144 | Sodium ppm: | 0 | Fitness to Particular Purpose, Conditions and Agreements Whatsoever (Whether |
| Sulfur %: | 0.00042 | Aluminum ppm: | N/A | Statutory or Otherwise) are Expressly |
| API Gravity: | 37.5 | Silicon ppm: | 0 | Excluded and Disclaimed. |

| Alongside: | Started Pumping: | Stopped Pumping: | Departed: | Barge PIC: |
|---|---|---|---|---|
| 1510 | 1600 | 1705 | | S STRICKLAND |
| Commenced | | | | Finished |

| Tank | Physical Gauge Ft. | IN. | Trim Correction Ft. | IN. | Corrected Gauge Ft. | IN. | Gross BBLs. | Tank | Physical Gauge Ft. | IN. | Trim Correction Ft. | IN. | Corrected Gauge Ft. | IN. | Gross BBLs. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1P | | | | | | | | 1P | | | | | | | |
| 1S | | | | | | | | 1S | | | | | | | |
| 2P | | | | | | | | 2P | | | | | | | |
| 2S | | | | | | | | 2S | | | | | | | |
| 3P | | | | | | | | 3P | | | | | | | |
| 3S | 15' 4 1/4" | | | | | | 391.11 | 3S | | | | | | | 16.32 |
| 4P | | | | | | | | 4P | | | | | | | |
| 4S | | | | | | | | 4S | | | | | | | |
| 5P | | | | | | | | 5P | | | | | | | |
| 5S | | | | | | | | 5S | | | | | | | |

| Product Name: | Gross Barrels: | Temp (deg F): | Temp. Corr. Factor: | Net Barrels: | Metric Ton Coef.: | Metric Tons: |
|---|---|---|---|---|---|---|
| MGO | 374.79 | 54.0 | 1.00283 | 375.85 | 0.13281 | 49.92 |

**THE UNDERSIGNED DOES HEREBY CERTIFY UNDER OATH:**

**STATE OF** SC **SALES AND USE TAX EXEMPTION CERTIFICATE** 15786

For use or consumption aboard ships plying the high seas either in intercoastal trade between ports in this state and ports in other states of the United States or its possessions or in foreign commerce between ports in this state and ports of foreign countries.

Vessels engaged in foreign commerce are exempt. The application of tax does not apply to mileage for vessels from the territorial limit to port dockside and return into international waters, foreign or coastwise.

*Effective June 1, 2010 15ppm sulfur (maximum) Dyed Ultra-Low Sulfur Diesel Fuel. For use in all non-road diesel engines. Not for use in highway vehicles or engines except for tax-exempt use in accordance with section 4082 of the Internal Revenue Code*

| Marpol Annex VI Declaration: This fuel conforms with regulation 14(1), 14(4) and 18(3) as indicated. | | |
|---|---|---|
| | X | REGULATION (<0.0015% SULFUR) |
| | | REGULATION (<0.1% SULFUR) |
| Certified By: _[signature]_ (Supplier's Representative) | | REGULATION (<0.5% SULFUR) |
| | | REGULATION (<3.5% SULFUR) |
| MARPOL Sample Seal #: | | 320397 |

DYED FUELS FOR OFF ROAD, NON-TAXABLE USE ONLY, PENALTY FOR TAXABLE

| Gauges | | Witness | | Not Witness | By: | CH·ENG | Ship's stamp | IMO Number: | (IMONumber) |
|---|---|---|---|---|---|---|---|---|---|
| | The Foregoing Received On Board Vessel | | | | | | | *9122899 | |
| | 02-02-20 | | | | | | | | |
| Date | Vessel Representative | | | | Title CH. ENG | | | | |
| Vessel's remarks: | | | | | | | | | |

# EXHIBIT 10



Worldwide Marine Oil Suppliers

1725 Hughes Landing Blvd., Suite 890
The Woodlands, TX 77380, USA
TEL: +1 713.622.0600 FAX: +1 713.622.0609 EMAIL:HOUSTON@PRAXISENERGYAGENTS.COM

## INVOICE

**BUYER:**

M/V EVOLUTION (IMO: 9122899) FLAG: LIBERIA
AND/OR SMOOTH NAVIGATION SA
AND/OR MASTER AND/OR OWNER AND/OR
MANAGERS AND/OR OPERATORS
AND/OR BETA MARITIME CORPORATION
57 AKTI MIAOULI STREET
PIRAEUS, GREECE 18536

| | |
|---|---|
| **DATE:** | 1 February 2020 |
| **INVOICE NUMBER:** | 23320 |
| **DELIVERY DATE:** | 1 February 2020 |
| **PORT OF DELIVERY:** | CHARLESTON |

| Product ID / Description | Quantity | Net Price / Qty | Net Value |
|---|---|---|---|
| MARINE GASOIL (DMA MAX. 0.1%) | 49.920 MT | USD 680.00 / MT | USD 33,945.60 |
| BARGING CHARGE (LUMPSUM) | 1.000 EA | USD 7,618.75 / EA | USD 7,618.75 |
| FEDERAL LUST TAX | 15,786.000 GL | USD 0.001 / GL | USD 15.79 |
| SC STATE EPA FEE | 15,786.000 GL | USD 0.005 / GL | USD 78.93 |
| SC STATE INSECTION FEE | 15,786.000 GL | USD 0.0025 / GL | USD 39.47 |
| | Total Item Net Value | | USD 41,698.54 |
| | Total | | USD 41,698.54 |

**DUE DATE:**  29 February 2020     (CREDIT TERMS:  **30 DAYS DUE NET FROM DELIVERY DATE)**

AN INTEREST CHARGE OF 2.5% PRO RATA PER MONTH WILL BE LEVIED FOR OVERDUE PAYMENT.

REMITTANCE DETAILS:

SWIFT:
ABA:
ACCOUNT #
IN FAVOR OF:  PRAXIS ENERGY AGENTS L.L.C.

PLEASE REMIT FREE OF ALL BANK CHARGES.

E & OE

# EXHIBIT 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**
**IN ADMIRALTY**

Carl Schröter GmbH & Co. KG,

                    Plaintiff,

vs.

Smooth Navigation S.A.,

                    Defendant.

Case No. 2:20-cv-334-RMG

———————————————————————

Praxis Energy Agents LLC,

                    Intervening Plaintiff,

vs.

M/V EVOLUTION, IMO No. 9122899, her
engines, freights, apparel, appurtenances,
tackle, etc., *in rem*, Smooth Navigation S.A.,
and Beta Maritime Corporation, *in personam*,

                    Defendants.

## <u>ATTORNEY AFFIDAVIT OF JOHN HUGHES COOPER</u>

Pursuant to 28 U.S.C. §1746, this affidavit is executed by John Hugues Cooper, Esq., counsel for the Intervening Plaintiff, Praxis Energy Agents LLC (hereinafter "Intervening Plaintiff" or "PRAXIS"), in order to secure the issuance of a Summons and Process of Maritime Attachment and Garnishment in the above-captioned admiralty action. I, John H. Cooper, declare under the penalty of perjury:

I am a Member of the firm Cooper & Bilbrey, P.C., attorneys for Intervening Plaintiff in the above referenced matter.

I am familiar with the circumstances of the Verified Complaint in Intervention, and I submit this affidavit in support of Intervening Plaintiff's request for the issuance of Process of Maritime Attachment and Garnishment of the property of the Defendants, Smooth Navigation S.A. (hereinafter "SMOOTH NAVIGATION") and Beta Maritime Corporation (hereinafter "BETA MARITIME"), and in support of Intervening Plaintiff's request for attachment of property of SMOOTH NAVIGATION and BETA MARITIME, to wit, Defendant M/V EVOLUTION (hereinafter "the Vessel"), pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

I have personally inquired or have directed inquiries into the presence of SMOOTH NAVIGATION and BETA MARITIME in this District.

I have directed attorneys in my firm to check with the office of the South Carolina Secretary of State, using the Secretary of State's database, and have determined that, as of March 13, 2020, SMOOTH NAVIGATION and BETA MARITIME are not incorporated pursuant to the laws of South Carolina, and has not nominated any agent for the service of process within the State.

I have directed attorneys in my firm to engage a search of the Superpages telephone directory on the internet, and determined that there are no telephone listings or addresses for SMOOTH NAVIGATION or BETA MARITIME within this District.

I have directed attorneys in my firm to engage in a Google search as to whether SMOOTH NAVIGATION and BETA MARITIME can be located within this District. The Google search results did not provide any information that SMOOTH NAVIGATION and BETA MARITIME are located in the District.

I am unaware of any general or managing agent(s) within this District for SMOOTH NAVIGATION and BETA MARITIME.

In that I have been able to determine that SMOOTH NAVIGATION and BETA MARITIME have not appointed an agent for service of process within the state of South Carolina and that I have found no indication that SMOOTH NAVIGATION and BETA MARITIME can be found within this District for the purposes of Rule B. I have formed a good faith belief based on the investigation of the attorneys under my direction that SMOOTH NAVIGATION and BETA MARITIME do not have sufficient contacts or business activities within this District and do not have any offices or agents within this District to defeat maritime attachment under Rule B of the Supplemental Rules for Admiralty and Maritime Claims as set forth in the Federal Rules of Civil Procedure.

It is my belief, based upon an investigation performed by attorneys in my firm under my direction that SMOOTH NAVIGATION and BETA MARITIME cannot be found within this District for the purposes of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

I have personally inquired or have directed inquiries into the presence of property belonging to SMOOTH NAVIGATION and BETA MARITIME, the Vessel, in this District for purposes of a Rule C arrest.

It is my belief that the Vessel is within the District of South Carolina and currently under attachment.

It is my belief, based upon an investigation performed by attorneys in my firm under my direction that the Vessel will be within this District for the purposes of Rule C of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 13, 2020
       Mt. Pleasant, South Carolina

/s/ John Hughes Cooper
John Hughes Cooper