# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION
# IN ADMIRALTY

| | | |
|---|---|---|
| Carl Schröter GmbH & Co. KG, | ) | Civil Action No.: 2:20-0334-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER FOR** |
| vs. | ) | **INTERLOCUTORY SALE** |
| | ) | **OF VESSEL** |
| Smooth Navigation S.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is Plaintiff's motion for interlocutory sale of the vessel M/V EVOLUTION. (Dkt. No. 20.) The Court heard oral arguments on the motion on April 10, 2020 and conducted a hearing regarding sale terms on April 22, 2020. For the reasons set forth below, the motion is granted.

I.      **Background**

This matter arises in admiralty and out of the shipment of over 15,000 metric tons of Direct Reduced Iron from the port of Bandar Abbas, Iran to the port of Surabaya, Indonesia. Plaintiff Carl Schröter GmbH & Co. KG ("Carl Schröter")'s complaint, filed on January 30, 2020, alleges that the iron was damaged by saltwater contact during the voyage on board M/V Evolution, owned and operated by Defendant Smooth Navigation S.A ("Smooth Navigation"). As assignee of the maritime claims of Interfer-Steel and Commodities FZE, Carl Schröter brings three causes of action against Smooth Navigation for negligence, breach of bailment, and a request for attachment of M/V Evolution pursuant to Rule B of the Supplemental Rules of Admiralty and Maritime Claims. (Dkt. No. 1.) On Carl Schröter's *ex parte* motion, the Court reviewed the complaint and the attorney affidavit and determined that conditions of attachment under Rule B warranted a

warrant of attachment, which the Court ordered on January 31, 2020. (Dkt. No. 9.) Smooth Navigation moved to vacate the warrant of attachment, which the Court denied after hearing oral arguments. (Dkt. Nos. 35, 38.) The Court granted Carl Schröter's motion to amend its complaint to add a breach of contract claim against Smooth Navigation. (Dkt. No. 37.) Now before the Court is Carl Schröter's motion for interlocutory sale of M/V EVOLUTION and Smooth Navigation's motions to authorize and compel payment of *custodia legis* expenses and to compel acceptance of substitute security. The Court heard oral arguments on these motions on April 10, 2020.

## II.     Legal Standard

The interlocutory sale of a vessel attached for the pendency of an admiralty claims is warranted when:

> On application of a party, . . . the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
>
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>
> (B) the expense of keeping the property is excessive or disproportionate; or
>
> (C) there is an unreasonable delay in securing release of the property.

Fed. R. Civ. P. Adm. Supp. R. E(9)(a)(i).

Regarding circumstance (A), the district court may rely on evidence suggesting that a vessel permitted to lay idle without routine maintenance could be susceptible to engine or parts corrosion and "general deterioration." *Merchants Nat'l Bank v. Dredge Gen. G.L. Gillespie*, 663 F.3d 1338, 1341-42 (5th Cir. 1981). Regarding circumstance (B), the cost of maintaining the vessel may be excessive if it is disproportionate to the vessel's fair market value or if the cost of storage and interest will continue to accrue. *See Beach First Nat. Bank v. Motor Yacht "BAD HABIT" et. al.*, No. 2:09-372-DCN, 2009 WL 1649743, at *3 (D.S.C. June 10, 2009). Regarding

circumstance (C), a defendant may unreasonably delay in securing the vessel's release if the defendant takes between three and eight months to do so, or if "no effort has been made by the owner to obtain its release." *Pee Dee State Bank v. F/V Wild Turkey*, No. 2:91-809-18, 1991 WL 355221 at *5 (D.S.C. Oct. 9, 1991); *see also Merchants Nat'l Bank*, 663 F.3d at 1341-42 (eight months is delay warranting sale, including where the vessel owner "never posted bond, entered into any stipulation, or otherwise attempted to secure the release of the vessels pursuant to Rule E(5)"); *Ferrous Fin. Serv. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983) (four months is delay warranting sale). Where one of these circumstances is identified, it is "in the best interests of all concerned" to liquidate the attached vessel. *Pee Dee State Bank*, 1991 WL 355221, at *4.

### III. Discussion

Sale of M/V EVOLUTION is warranted under the particular circumstances present here. The estimated expense of maintaining the vessel, as of February 22, 2020, is extensive: $11,850 spent to move it to Commercial Anchorage B; $800 per day cost of the substitute custodian; $68,170 in dockage fees as of February 22; $37,818 estimated for fuel requirements; and $500 in potable water needs, among other costs. These costs only compound as time passes. By contrast, her estimated fair market value of $2,750,000, which was provided at the time of the filing of this motion, continues to diminish as her facilities deteriorate, in part from lack of operation. Weighing the vessel's compounding expenses against her disproportionately decreasing value, the Court finds that interlocutory sale is warranted. Fed. R. Civ. P. Adm. Supp. R. E(9)(a)(i)(B); *see, e.g.*, *See Beach First Nat. Bank*, 2009 WL 1649743, at *3 (finding interlocutory sale warranted where "the value of the Vessel . . . is already insufficient to cover the amounts alleged owed . . ., with the equity in the Vessel continuing to be depleted [and] storage costs and interest continue to accrue

and further increase the amounts owed on the Vessel."). Relatedly, Smooth Navigation represents that the substitute security it proposes and Carl Schröter rejects, a first preferred mortgage on the vessel, is "the only alternative substitute security available to the Defendant." (Dkt. No. 40 at 1.) Continuing to expend these costs to maintain the vessel, when an unsuitable substitute security is the only option to secure her release, would only result in further unreasonable delay to secure her release. Fed. R. Civ. P. Adm. Supp. R. E(9)(a)(i)(C).

## IV.     Conclusion

Having considered the parties' proposed sale terms (Dkt. Nos. 60 61) and in consideration of the Supplemental Admiralty Rules, the Court finds that interlocutory sale of this vessel is appropriate in these circumstances. The Court **GRANTS** Carl Schröter's motion (Dkt. No. 20) and **HEREBY ORDERS, ADJUDGES AND DECREES** that:

1.      For the reasons set forth in Rule E(9)(a)(i), that the M/V EVOLUTION (IMO No. 9122899), her engines, freights, apparel, appurtenances, tackle, etc. ("vessel") shall be **sold, as is, where is**, by the United States Marshals Service ("Marshals Service") to the high bidder, **free and clear** of all liens, claims, mortgages, and encumbrances; and it is

2.      FURTHER ORDERED that said sale of the vessel shall be conducted at **11:00 a.m. Eastern Daylight Time on May 15, 2020**; and it is

3.      FURTHER ORDERED that sale of the vessel shall be for **a minimum bid** of no less than $1,250,000.00 and minimum bid increments of $10,000.00. Prospective bidders shall deposit with the United States Marshals Service an earnest money deposit of $125,000.00 at or before the time of sale. Said earnest money deposit shall be in the form of a bank check or in the form of funds held in a trust account maintained by an attorney in good standing and admitted to the bar of this Court, who shall certify funds so held in trust; and it is

4. FURTHER ORDERED that CW Kellock & Co Ltd ("Broker") shall act as Broker for this sale and shall be entitled to **a commission** equal to two (2%) percent of the confirmed sales price. Broker shall use its best efforts to advertise, market, and promote the sale. The Broker shall consult with the Marshals Service and with counsel for the parties with regard to any proposed advertising in trade publications or similar. The cost of any such advertising shall be an *in custodia legis* expense; and it is

5. FURTHER ORDERED that Plaintiff shall advertise the sale in ***The Post and Courier***, which is designated as a paper of general circulation in this District, on no less than 3 occasions, and in ***Lloyd's List*** and ***TradeWinds*** and the cost of such advertising shall be an *in custodia legis* expense. The parties may, at their own expense, promote or advertise the sale in other ways, publication, and/or media; and it is

6. FURTHER ORDERED that the sale shall be held in the first floor lobby of the **United States Post Office** building at the corner of Broad and Meeting Streets, Charleston, SC or any other location at or near the Federal Court House in Charleston, SC as directed by the Marshals Service. Broker and the Marshals Service shall work together to arrange preregistration of bidders, auction arrangements, and sale rules. Broker and the Marshals Service shall accept sealed bids in writing before the sale, accept in person bids at the Post Office building, and accept on-line **internet** bids; and it is

7. FURTHER ORDERED that Plaintiff shall request the Substitute Custodian, James D. Lucas Jr. Co. LLC, to arrange a **marine survey** of the vessel for use by Broker and the parties to promote the sale, and the cost of such survey shall be an *in custodia legis* expense; and it is

8. FURTHER ORDERED that the earnest money deposit, if **a bank check**, shall be paid to the United States Marshals Service at the time the high bid is accepted. If the earnest

money deposit for the high bid is in **an attorney's trust account**, the attorney shall transfer same to the Marshals Service as soon as possible, but no later than 4:45 pm Eastern Standard Time on May 18, 2020. When received the Marshals Service shall deposit the earnest money into the registry of the Court; and it is

9. FURTHER ORDERED that the remaining **balance of the purchase price** shall be paid to the Marshals Service by cash, bank check, or wire transfer on or before May 21, 2020. When received the Marshals Service shall deposit the balance of the purchase price into the registry of the Court; and it is

10. FURTHER ORDERED that after the sale the United States Marshals Service shall forthwith file a **return** with the Clerk of this Court; and it is

11. FURTHER ORDERED that if the successful bidder does not pay the balance of the purchase price when required, said bidder shall be in **default** and the defaulting bidder's earnest money deposit shall be forfeited and applied to any additional costs incurred by the United States Marshals Service because of the default. The balance of the earnest money deposit shall be retained in the registry of the Court, pending further Order of this Court; and it is

12. FURTHER ORDERED that any party or interested person may **object to the sale** on or before May 20, 2020 by (a) filing a written objection with the Court, by (b) serving a copy of the objection upon counsel for all parties in this action, upon the successful bidder, and upon the Marshals Service, and by (c) paying the Marshals Service an amount determined by the Marshals Service as sufficient to pay the expenses of keeping the vessel for at least 14 days; and it is

13. FURTHER ORDERED that this Court will set an expedited hearing to consider any objection to the sale. If no objection is filed and/or no payment is made to the Marshals Service

to pay the expenses of keeping the vessel for at least 14 days, the Court may enter its Order Confirming Sale without a hearing.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

April 22, 2020
Charleston, South Carolina