IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY

| | | |
|---|---|---|
| Carl Schröter GmbH & Co. KG, | ) | |
| | ) | Civil Action No.: 2:20-cv-334-RMG |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Smooth Navigation S.A., | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION BY THE INTERVENING PLAINTIFF THE LONDON STEAM-SHIP OWNERS' MUTUAL INSURANCE ASSOCIATION, AND SUPPORTING MEMORANDUM OF LAW, FOR RECONSIDERATION OF THE COURT'S ORDER CONCERNING THE CREW'S LIEN FOR THE COSTS OF REPATRIATION**

COMES NOW the Intervening Plaintiff The London Steam-Ship Owners' Mutual Insurance Association ("**The London Club**" or "**Club**"), pursuant to *Fed. Rules Civ. P*. 59 and 60, to respectfully request this Honorable Court to reconsider its Order of January 30, 2020 (ECF 133) insofar as the Order holds the costs of the crew's repatriation are not subject to the same priority given to the lien for crew wages established under U.S. law. The Club's Motion is supported by the within Memorandum of Law. The grounds for this Motion are that, respectfully, the Order contains a clear error of law which must be rectified in order to prevent manifest injustice, not merely to the Club, but to all ships' crews who should ever seek reimbursement of their repatriation expenses.

It is undisputed that the Club was the assignee of the rights of all of the crewmembers, including their right to liens against the proceeds of the sale of the Vessel which are presently deposited in the Court's registry. The Club also has similar rights by operation of the law which obligated the Club to incur the repatriation expenses, the Maritime Labour Convention, 2006

("**MLC**"), and by operation of the laws of this Court. *Gen. Elec. Credit & Leasing Corp. v. Drill Ship Mission Exploration*, 668 F.2d 811, 813–14 (5th Cir. 1982) (citing *Int'l Paint Co. v. M/V Mission Viking*, 637 F.2d 382, 385–86 (5th Cir. 1981), *decision clarified sub nom. Int'l Paint Co. v. M/V Mission Viking*, 642 F.2d 160 (5th Cir. 1981)); *United States v. HUAKAI*, 768 F. Supp. 2d 832, 842–44 (E.D. Va. 2011); *In re Good Ship Appledore, Ltd.*, 122 B.R. 821, 829 (Bankr. D. Me. 1990) (citing *Medina v. Marvirazon Compania Naviera, S.A.*, 533 F.Supp. 1279, 1286 (D.Mass.1982), *aff'd*. 709 F.2d 124 (1st Cir.1983)).

While the Club stands in the shoes of the crew, it is the interests of the seamen themselves which prompt this motion. A holding that the crew has no priority wage lien for the costs of repatriation would work a terrible injustice to the tens of thousands of seafarers around the world who rely on the courts to protect their interests, especially in the United States where they are viewed as "the wards of the admiralty." *See e.g., Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 782-83 (1952) *infra*.

I.     **The Club's Motion for Reconsideration is timely and appropriate.**

Pursuant to *Fed. R. Civ. P.* 54(b), an interlocutory order "that adjudicates fewer than all the claims ... may be revised at any time before the entry of a judgment adjudicating all the claims." *Fed. R. Civ. P.* 54(b). A district court retains the power to reconsider and modify its interlocutory orders at any time prior to final judgment when such is warranted. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003); see also *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"); *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at

any time prior to the entry of a final judgment."); *Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2020 WL 7753102, at *2 (S.D.W. Va. Dec. 29, 2020) (same).

Rule 59 motions are successful in three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *MATTHEW O'REILLY v. ADAM TSOTTLES*, No. CV GLR-18-3622, 2021 WL 424415, at *3 (D. Md. Feb. 8, 2021); *see U.S. ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 210–11 (4th Cir. 2017) (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)). With respect to the third factor, there must be more than a "mere disagreement" with a decision to support a Rule 59(e) motion. *MATTHEW O'REILLY,* 2021 WL 424415, at *3; *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993). As to the "manifest injustice" standard, courts focus on whether there was fairness in the administrative process or a denial of due process. *MATTHEW O'REILLY,* 2021 WL 424415, at *3. Rule 59 permits a district court to correct its own errors, "sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

**II.     <u>Seamen are the wards of the Court and their interests must be protected.</u>**

Seamen are universally entitled to special protection by the courts, which certainly would not condone their being stranded in a foreign port and effectively sold along with the vessel. *See e.g., The Governor and Company of the Bank of Scotland v. Hector Sabay, et al.*, 211 F. 3d 261, 265-266 (5th Cir. 2000) (citing *Bainbridge v. Merchants' & Miners' Transp. Co.,* 287 U.S. 278, 282 (1932)) ("Seamen have always been regarded as wards of the admiralty, and their rights, wrongs, and injuries a special subject of the admiralty jurisdiction"); *Hume v. Moore-McCormack Lines*, 121 F.2d 336, 340-41 & n. 13 (2d Cir. 1941) (discussing historical background of judicial

3

solicitude for seamen's rights, including the writings of Lord Stowell), *cert. denied*, 314 U.S. 684 (1941); *see also* 1B BENEDICT ON ADMIRALTY, § 61, at 5-1 (7th ed.1997); THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, VOL. 1, § 6-1, at 239 (2d ed. 1994) ("The protection of seamen was one of the principal reasons for the development of admiralty as a distinct branch of law."); MARTIN J. NORRIS, THE LAW OF SEAMEN, VOL. 1, § 12:1, at 424-26 (4th ed.1985); *FIMBank PLC, et. al. v. Discovery Investment Corp., et. al.*, Case 2:19-cv-00264, Document 182-1 Filed on 09/14/20 in TXSD Page 9-10 of 13 (referencing Justice Story and others).

The Fifth Circuit's decision in the *Bank of Scotland* case also aptly reiterated the rationale for such concern about seamen's rights as stated in *The DAVID PRATT*, 7 F. Cas. 22, 25 (D.Me.1839):

> Seamen are not a class of men who ordinarily make provision against the future. On their return from a voyage they are usually dependent on their wages for present support, and if they are withheld they ordinarily find themselves in a state of entire destitution, not only without present means to provide for their immediate and most pressing necessities, but without credit.

*The Governor and Company of the Bank of Scotland*, 211 F. 3d at 266.  This time-honored rationale is especially applicable to this case. Overworked seamen were abandoned in a foreign port and were left without their contractual employment benefit of repatriation.  But for the Club stepping in to pay the costs incurred in relation to their repatriation under the MLC, the crew would have been left here, thousands of miles from home, subject to Customs and Border Patrol detention. And if the Court's decision setting the repatriation claim lower in priority than seaman's wages should stand, then the seamen would have been left without rights against the Vessel's sale proceeds for their contractually provided repatriation expenses, where, as this court has held, their repatriation costs did not fall within their protected "wage lien" priority.  (ECF No. 133, p. 6). Such a result would undermine the protected "ward of the court" status conferred on seamen

throughout this country and would serve as precedent to deny future seamen a right to sale proceeds at the priority of a wage lien to recover their repatriation expenses.

### III. The Crew Wage lien must include the costs for repatriation.

In its Order, the Court referred to *Isbrandtsen Co. v. Johnson*, a seamen's penalty wage claim case, and not a case addressing a crewmembers' lien for his wages. (ECF No. 133, p. 6). However, *Isbrandtsen* is instructive on the Court's interpretation of what should be included in any legislation addressing a crewman's rights:

> Whenever congressional legislation in aid of seamen has been considered here since 1872, this Court has emphasized that such legislation is largely remedial and calls for liberal interpretation in favor of the seamen. The history and scope of the legislation is reviewed in *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 727—735, and notes, 63 S.Ct. 930, 932—936, 87 L.Ed. 1107. 'Our historic national policy, both legislative and judicial, points the other way (from burdening seamen). Congress has generally sought to sageguard seamen's rights.' *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 246, 63 S.Ct. 246, 251, 87 L.Ed. 239. '(T)he maritime law by inveterate tradition has made the ordinary seaman a member of a favored class. He is a 'ward of the admiralty,' often ignorant and helpless, and so in need of protection against himself as well as others. * * * Discrimination may thus be rational in respect of remedies for wages.' *783 Warner v. Goltra*, 293 U.S. 155, 162, 55 S.Ct. 46, 49, 79 L.Ed. 254; *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 375, 377, 53 S.Ct. 173, 175—176, 77 L.Ed. 368; *Wilder v. Inter-Island Steam Navigation Co.*, 211 U.S. 239, 246—248, 29 S.Ct. 58, 61—62, 53 L.Ed. 164; Patterson v. Bark Eudora, 190 U.S. 169, 23 S.Ct. 821, 47 L.Ed. 1002; *Brady v. Daly*, 175 U.S. 148, 155—157, 20 S.Ct. 62, 64—65, 144 L.Ed. 109. 'The ancient characterization of seamen as 'wards of admiralty' is even more accurate now than it was formerly.' *Robertson v. Baldwin*, 165 U.S. 275, 287, 17 S.Ct. 326, 331, 41 L.Ed. 715;[5] *Harden v. Gordon*, 11 Fed.Cas.No.6,047, 2 Mason 541, 556.

*Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 782-83 (1952). And although the court in *Isbrandtsen* differentiated between a crewman's actual "wages" and "wages which were attached or seized by his employer to secure the seaman's return travel home under an unrelated statute," the Court concluded that these travel related withheld wages fell within the "wage" to be protected by the statute. *See id.* at 784-789; *see* 46 U.S.C. § 11109 Attachment of Wages (formerly referred to as § 4536 of the Revised Statutes of the United States (U. S. Comp. Stat. 1901, p. 3082)).

5

In the January 20, 2020 Order, this Court commented that "the Court rejects The Club's argument that repatriation expenses constitute crew 'wages' which must be treated as seamen's liens. The Club cites no case law endorsing its theory." (ECF 133, p. 6) (citing ECF No. 102, p. 10-11). In fact, The Club's Consolidated Reply set forth at length different authorities which held that repatriation expenses were covered by the crew's lien priority. Specifically, the Club stated:

> For decades, courts have deemed repatriation expenses as part of a crewman's priority wage lien. In *Sunrise Shipping, Ltd. v. M/V AMERICAN CHEMIST*, No. CIV.A. 96-2849, 1997 WL 627559, at *5 (E.D. La. Oct. 8, 1997), an injured seaman requested that vessel sale proceeds be used to reimburse repatriation costs. The court granted this request stating this expense "receive[s] a priority ranking as a lien for seaman's wages." *Id.*; *see also Bender Welding & Machine Co. v. M/V Sovereign Opal*, 415 F.Supp. 772 (S.D.Al. 1976) (failure to pay repatriation expenses creates a lien for seaman's wages). Other courts have also classified repatriation expenses as wages "entitled to priority generally accorded to them." *The William Leishear*, 21 F.2d 862, 864 (D. Md. 1927) (citing *In re Castrian S.S. Co.*, 290 F. 397 (E.D.N.Y. 1923); *The Princess*, 291 F. 89 (E.D. Pa. 1923); *Gerber v. Spencer*, 278 F. 886 (9th Cir. 1922). The court in *In re Glob. Container Lines Ltd.*, No. 09-78584(AST), 2010 WL 5053966, at *2 (Bankr. E.D.N.Y. Mar. 25, 2010), gave the same priority to crew wages and repatriation costs. *See also In re McLean Indus.*, 74 B.R. 589, 592 (Bankr. S.D.N.Y. 1987) (grouping wages and repatriation costs together); *Todd Shipyards Corp. v. The City of Athens*, 83 F. Supp. 67, 72 (D. Md. 1949).

(ECF 113, p. 6-7). Each of these cases addressed the crew's lien for travel or repatriation expenses, and each awarded the crewman his priority wage lien status for those repatriation expenses. (Plaintiff has already filed a *sur-reply* Memorandum to address what it considered arguments raised by the Club for the first time. (ECF 114)).

That there is a dearth of caselaw on the issue is reasonable where the vast majority of repatriation claims occur after the vessel has been arrested and sold, in which case the repatriation expenses may also be sought as *custodia legis*, which have a higher priority under U.S. lien law than do crew wage claims. However, that should not diminish the need to clarify the Court's error on the issue to protect the interests of seamen in non-*custodia legis* instances. Seamen have a right to repatriation expenses, and that right is as sacrosanct as any claim for their wages.

These cases respect the time-honored tradition of treating seamen as the wards of the court, and the common law tradition of liberally interpreting legislation affecting seamen's rights in favor of the seamen. This Court's decision, if left uncorrected, would turn back the clock on seamen's rights to before the creation of this Republic.

## CONCLUSION

Based upon the foregoing, The Club respectfully asks this Honorable Court to reconsider its January 20, 2021 Order, and hold that the Club, as the assignee and subrogee of the rights and liens of the crew, is entitled to the costs associated with the repatriation of the crew as part of the crew wage lien.

|  | HINES & GILSENAN LLC<br><br>/s/ Ryan D. Gilsenan<br>Ryan D. Gilsenan, Fed. ID No. 9837<br>1535 Hobby Street, Suite 203D<br>Charleston Navy Yard<br>North Charleston, South Carolina 29405<br>Tel: 843.847.8003<br>Email: Gilsenan@hinesandgilsenan.com<br><br><br>Thomas L. Tisdale (Pro Hac Vice)<br>Timothy J. Nast (Pro Hac Vice)<br>Tisdale Law Offices, LLC<br>200 Park Avenue, Suite 1700<br>New York, New York 10166<br>(212) 354-0025<br>Email: ttisdale@tisdale-law.com<br>Email: tnast@tisdale-law.com<br><br>*Counsel for the Intervening Plaintiff The London Steam-Ship Owners' Mutual Insurance Association* |
|---|---|