# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION
# IN ADMIRALTY

| | |
|---|---|
| Carl Schröter GmbH & Co. KG, | Civil Action No.: 2:20-0334-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Smooth Navigation S.A., | |
| Defendant. | |

Before the Court is Intervening Plaintiff the London Steam-Ship Owners' Mutual Insurance Association ("The Club")'s renewed motion for legal fees as *custodia legis*. (Dkt. Nos. 102, 136, 149). For the reasons set forth below, the Court denies the motion.

## I.     Background

The Court assumes the parties' familiarity with the facts of this case. *See* (Dkt. No. 148 at 2-4).

On January 20, 2021, (Dkt. No. 133), the Court denied in part and denied without prejudice in part The Club's motion for *custodia legis* and necessaries, (Dkt. No. 102). The Court denied The Club's request for $15,147.65 in P&I premiums earned but unpaid during the detention of the M/V Evolution (the "vessel"). (*Id.* at 8-9). The Court otherwise denied without prejudice The Club's requests for reimbursement of certain expenses as *custodia legis* or necessaries. (*Id.* at 7, 9-10). The Court directed The Club to submit supplemental briefing on its request for reimbursement of repatriation expenses as *custodia legis* and its request for reimbursement, as necessaries, of certain insurance premiums.

On May 11, 2021, after receiving supplemental briefing, *see* (Dkt. No. 136), the Court, *inter alia*, awarded The Club $133,202.08 as *custodia legis* for various expenses associated with repatriating the crew of the vessel after its detention and subsequent sale at a judicial auction, (Dkt. No. 148 at 10-11). The Court denied without prejudice, however, that part of The Club's renewed motion which requested reimbursement of $73,959.00 for legal fees allegedly associated with organizing and effectuating repatriation of the crew. (*Id.* at 12-13). The Court found The Club's supporting documentation "inadequate" and ordered The Club to clarify the expenses it sought reimbursement for. (*Id.* at 13-14).

On May 24, 2021, The Club provided supplemental information regarding its request for reimbursement of legal fees as *custodia legis*. (Dkt. No. 149). Plaintiff Carl Schroter GmbH & Co. KG and intervening Plaintiff Praxis Energy Agents, LLC timely filed oppositions to the The Club's renewed request for reimbursement of legal fees as custodia legis. (Dkt. Nos. 152 & 153). The Club filed a reply. (Dkt. No. 154).[1]

The Club's renewed request for reimbursement of legal fees as *custodia legis* is fully briefed and ripe for disposition.

**II.     Legal Standards**

*In custodia legis* is a Latin phrase meaning, "in the custody of the law." In the admiralty context, *custodia legis* expenses are the costs, fees, and expenses incurred by seizing a vessel. Although a "person furnishing goods or services to a vessel after its arrest (*in custodia legis*) does not acquire a maritime lien against the vessel for the value of those goods or services," the court has "inherent equitable power to give priority to claims arising out of the administration of property

---

[1] To be precise, The Club filed a motion for leave to file a reply brief in which it included a reply. (Dkt. No. 154). The Court hereby GRANTS The Club leave to file its reply and considers it in deciding The Club's motion.

within its jurisdiction where equity and good conscience so require." *Kingstate Oil v. M/V Green Star*, 815 F.2d 918, 922 (3d Cir. 1987). This is because, in part, the "most elementary notion of justice would seem to require that services or property furnished upon the authority of the court or its officer, acting within his authority, for the common benefit of those interested in a fund administered by the court, should be paid from the fund as an 'expense of justice.'" *N.Y. Dock Co. v. The Ponzan*, 274 U.S. 117, 120-21 (1927).

To determine whether an expense qualifies for *custodia legis* status, courts have focused on three considerations derived from the *Ponzan* decision: (1) whether the expense was specifically authorized by the court; (2) the necessity of the cost in keeping the *res* in the court's custody; and (3) the necessity of the cost to preserve and maintain the *res*, which inures to the benefit of all claimants. *See Grand Max Marine Ltd. v. Misr Edco Shipping Co. S.A.E.*, No. 2:06-cv-1866-DCN, 2007 WL 9747240, at *3 (D.S.C. June 1, 2007) (collecting cases). Regarding the first consideration, "[w]hile it is preferable to secure a court order authorizing [an] expense before incurring it, nevertheless even in the absence of court order these 'custodia legis expenses' may be ordered by the court to be paid in priority to the seizing mortgage creditor if 'equity and good conscience' so require." *Gen. Elec. Credit & Leasing Corp. v. Drill Ship Mission Expl.*, 668 F.2d 811, 815 (5th Cir. 1982) (quoting *Poznan*, 274 U.S. at 120). Nevertheless, "[s]ince the seizure revokes all authority to incur liabilities on behalf of the ship, one who renders services without first requiring the Court's permission, does so at his risk." *Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve Ticaret A.S.*, 10 F.3d 176, 178-79 (3d Cir. 1993).

The "district court enjoys broad equitable authority over the administration of maritime seizures." *Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351, 354 (5th Cir. 1997). The party seeking to collect *custodia legis* expenses bears the burden of proving that those expenditures were

3

reasonably incurred and reasonable in amount. *See Gulf Copper & Manu. Corp. v. M/V LEWEK EXPRESS*, No. 3:19-cv-0034, 2019 WL 2435848, at *1 (S.D. Tex. June 11, 2019).

III. **Discussion**

After a careful review of the parties' submissions, and the supplemental information provided by The Club, the Court denies The Club's request for reimbursement of legal fees as custodia legis.

In suits at admiralty, there is no statutory right to attorney's fees. *Whorton v. Home Ins. Co.*, 724 F.2d 427, 431 (4th Cir. 1984); *Geftman v. Boat Owners Ass'n of the U.S.*, No. C/A 2:02-1461-18, 2003 WL 23333312, at *4 (D.S.C. Dec. 2, 2003) ("Attorney's fees are awarded under admiralty law solely under a rare exception to the 'American Rule.' Fees are not allowed unless there has been a showing that opposing counsel has commenced or conducted an action in bad faith, vexatiously, wantonly, or for oppressive reasons."). Here, no bad faith has been shown. In order to be reimbursable as *custodia legis*, therefore, The Club bears the burden of showing that the expenses it occurred were necessary in keeping the *res* in the court's custody and that the necessity of said cost to preserve and maintain the *res* inured to the benefit of all claimants. *See Grand Max Marine Limited*, 2007 WL 9747240, at *3. While one district court case from the Fifth Circuit has opined in dicta that legal fees could theoretically be *custodia legis*, *Sunrise Shipping, Ltd. v. M/V Am. Chemist*, No. CIV. A. 96-2849, 1998 WL 57047, at *2 (E.D. La. Feb. 10, 1998), no case brought to the Court's attention has yet allowed for a party's attorney fees to be reimbursed as a *custodia legis* expense.

In its May 11, 2021 order, this Court found that The Club was obligated, as the surety for the vessel, to repatriate the crew under the Maritime Labor Convention of 2006. (Dkt. No. 148 at 9). The Court further found that, in equity and good conscience, The Club was entitled to the

reimbursement of $133,202.08 for nearly all expenses associated with the repatriation including surveyor's fees, parole applications, launch services, hotel and airfare costs, and security services—the crew being necessary to the vessel's maintenance during its detention. (*Id.* at 10). As it pertained to legal fees provided by Sean Housel, an attorney at Womble Bond & Dickinson (US) LLP, which The Club alleged were associated with repatriation, however, the Court declined to rule on whether said costs were or were not *custodia legis*. (*Id.* at 12) (acknowledging The Club's argument that specialized services may have been necessary to organize the repatriation of the crew in light of COVID-19 but finding the documentation provided by The Club in support of its request for reimbursement of attorney's fees "inadequate"). The Court observed that The Club's request for reimbursement of legal fees relied on roughly forty pages of billing statements that were "block billed"[2] and which included tasks undertaken solely for the benefit of The Club or, at times, for the benefit of no one in particular. *See, e.g.*, (*id* at 12-13 and n.7) (seeking reimbursement for The Club's attorney speaking with a newspaper reporter). After noting other deficiencies with The Club's request for reimbursement of legal fees as *custodia legis*, and to better consider the full nuance of its argument, the Court denied the request for reimbursement of legal fees without prejudice and directed The Club to provide supplemental information as to its billing calculations, including a chart detailing all tasks it sought reimbursement for. (*Id.* at 14).

The Club submitted the requested documentation. (Dkt. No. 149). The amount of legal fees for which The Club sought reimbursement dropped dramatically—from $73,959 to $39,360, a roughly 46.7% decrease. As noted by Plaintiff Carl Schroter, the list of tasks for which

---

[2] "Block Billing is the practice of grouping, or lumping, several tasks together under a single entity, without specifying the amount of time spent on each particular task." *Morris v. Bland*, No. 5:12-CV-3177-RMG, 2015 WL 12910631, at *4 (D.S.C. Jan. 15, 2015) (internal quotation marks omitted).

5

reimbursement was sought still contained requests for tasks unrelated or only tangentially related to repatriating the crew such as: (a) status conferences with the crew or the crew's counsel regarding "wages" or "updates"; (b) time spent attempting to arrange for the vessel to go to a layberth; and (c) time spent communicating with the new purchaser of the vessel regarding the purchaser's plans to bring new crew on board the vessel. (Dkt. No. 152 at 7-10). The revised request also included a few arguably duplicative entries, entries for ministerial tasks, and, despite this Court's prior order, entries that were block billed—specifically on June 18 and June 19, 2020 for a combined total of roughly 18.8 hours. *See* (Dkt. No. 152 at 10-12) (arguing that various tasks, such as arranging airplane tickets and bus services, could have been delegated to a paralegal or legal assistant and did not require "an attorney with 28 years of experience")

The Court has now reviewed The Club's request for reimbursement of legal fees in its entirety and holds that such costs are not *custodia legis*. No binding or persuasive legal precedent dictates finding legal fees are *custodia legis*. Nor has The Club, even with the benefit of extensive briefing or clarified supporting submissions, persuasively articulated a reason to depart from the above line of reasoning. In fact, the law is to the contrary, namely that absent bad faith parties in suits at admiralty bear their own costs. And while this Court previously noted that *Sunrise Shipping, Ltd.*, 1998 WL 57047, at *2, mentioned in dicta that legal fees could theoretically be *custodia legis*, the *Sunrise* court itself rejected the idea, *Id.* (denying request for reimbursement of attorney's fees but granting, as *custodia legis*, reimbursement for crew member salaries and airfare paid by the Bank as part of a "settlement" with the crew). *See also Whorton*, 724 F.2d at 431 (confirming there is no statutory right to attorneys' fees in suits at admiralty).

Here, settled principles clearly apply. The crew itself contributed to maintaining the vessel. The legal tasks which The Club seeks reimbursement for, however, did not or only did so indirectly

in that the legal tasks served to repatriate the crew, which *itself* maintained the vessel. Further, a review of the tasks The Club seeks reimbursement for shows that often such tasks served to benefit The Club in the defense of its *own* case as opposed to solely benefiting the crew. *See The Ponzan*, 274 U.S. at 122; *see also, e.g.*, (Dkt. No. 152-1 at 8-9) (seeking reimbursement for, inter alia, "additional calls from substitute custodian regarding *wage payments* and repatriation plans" and "prepar[ing] [a] list of issues to address associated with repatriation of crew and reimbursement of repatriation costs from sale proceeds") (emphasis added). Last, and crucially, public policy arguments cut against finding legal fees are *custodia legis*. As the parties' opposing The Club's motion articulate, and as The Club's revised billing statement makes plain, all parties, through their work litigating this matter, at various times and to varying degrees, contributed to the preservation of the *res* during the vessel's detention.[3] At heart, The Club's revised billing statement demonstrates that no principled method exists to parse the work undertaken for The Club's benefit as opposed to work solely for the benefit of the crew of the vessel. Accordingly, in equity and good conscience, no award of attorney's fees as *custodia legis* can be made.

---

[3] Carol Schroter aptly argues, "The conclusion is inescapable that there were many efforts by all parties' counsel in this case that ultimately helped with the repatriation of the crew and the sale of the vessel. To go down the road of classifying some but not all of those efforts as 'custodia legis' is problematic, as it would open up questions in this case as to disparate treatment of identical attorney time. On the other hand, if such repatriation and vessel sale services provided by all counsel in this case potentially are custodia legis expenses, then so must be similar assistance by counsel in all other in rem cases. As a matter of public policy, such a determination would place an incredible burden on future courts of having to pour over reams of attorney time entries over months or even years to try to determine which ones legitimately contributed to the preservation of the vessel or the creation of the fund." (Dkt. No. 152 at 6). *See also* (Dkt. No. 153 at 5) ("By way of example, counsel for Plaintiff Carl Schroeter and Intervenor Plaintiff Praxis expended numerous hours of attorney time dealing with the substitute custodian, vessel agents, US Coast Guard, and CBP during the months of February, March, April, and May on behalf of the Vessel when Owners had constructively abandoned the Vessel by refusing to post substitute security and refusing to pay for supplies and necessaries to the Vessel.").

## IV. Conclusion

For the foregoing reasons the Court **DENIES** The Club's renewed motion for reimbursement of legal fees as custodia legis. (Dkt. Nos. 102, 136, 149).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel  
Richard Mark Gergel  
United States District Judge

June 24, 2021  
Charleston, South Carolina